COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Frank and McClanahan
Argued at Chesapeake, Virginia


MADRID ELSWORTH WILLIAMS

                                                        OPINION BY
v.        Record No. 0930-03-1           JUDGE ROSEMARIE ANNUNZIATA
                                                        APRIL 6, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James A. Cales, Jr., Judge

S. Jane Chittom, Appellant Defender (Public Defender Commission,
on briefs), for appellant.

Margaret W. Reed, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Madrid Elsworth Williams was convicted in a bench trial of possession of cocaine with

the intent to distribute in violation of Code § 18.2-248 and sentenced to five years in prison,

three years and six months suspended.  Williams appeals his conviction on the grounds that (1)

the evidence used against him was unlawfully seized because the police improperly impounded

his car, (2) the evidence was insufficient to prove he possessed the cocaine, and (3) the evidence

was insufficient to establish his intent to distribute the cocaine.  For the reasons that follow, we

affirm.

I.  Background

On appeal, we view the evidence, and all reasonable inferences that may be drawn from

the evidence, in a light most favorable to the Commonwealth as the party prevailing below.

Garcia v. Commonwealth, 40 Va. App. 184, 189, 578 S.E.2d 97, 99 (2003).  So viewed, the

evidence establishes that, on October 16, 2002, at approximately 3:00 a.m., Officer Vincent

McLean observed a vehicle make an illegal "U-turn." He stopped the driver, Madrid Elsworth Williams, who was alone in the car.

McLean asked Williams to produce his driver's license and the vehicle's registration. Williams searched the glove compartment for "a few seconds," but he could produce neither the vehicle's registration nor a driver's license. McLean asked Williams if he would accompany him to his patrol car where he could verbally obtain Williams's information. Williams complied.

McLean ran the information Williams produced through dispatch and learned that Williams's license was suspended. Williams stated that the car belonged to his girlfriend, but McLean could not recall whether he provided a name. "I think he just said 'girlfriend,'" McLean testified. McLean and Williams remained in the car while McLean completed the appropriate summonses.

When Officer James Spaven arrived on the scene, McLean asked him to prepare the vehicle for towing and impoundment. Spaven performed an inventory search of the vehicle and discovered a "Newports" cigarette box in the glove compartment. The cigarette box contained twenty-four individually packaged rocks of crack cocaine. No ingestion devices were found in the car. Spaven showed McLean the evidence, who then informed Williams that he was under arrest for possession of cocaine. Williams responded, "Oh, man, thanks for not charging me with PWID [possession with intent to distribute]."

At trial, McLean gave the following reasons for impounding the vehicle: "If there is not a licensed driver inside the vehicle, then we tow it for several reasons, safety of the contents of the vehicle, plus at the time this vehicle had a broken-out window, and this neighborhood is not a safe place to leave the vehicle in." McLean also said that he could not determine the owner of the vehicle because Williams could not produce the vehicle's registration information.

The Commonwealth called Detective R.M. Holly as an expert in the use, packaging, and distribution of narcotics. Holly testified that the certificate of analysis established that the cocaine found in the cigarette box weighed 1.95 grams. Heavy users, Holly explained, would use approximately half a gram per day. In his opinion, the cocaine recovered from the car was inconsistent with personal use because users could "get twice as much for the amount of money" if the drugs were purchased in block form. "The fact that [the cocaine was] individually wrapped" also informed Holly's opinion that it was intended for "something other than personal use."

Williams testified in his own defense. Williams claimed that he provided the vehicle's registration card, with the name of his girlfriend listed as the owner, to McLean. Williams said he told McLean the car belonged to her and that he asked the officer to call her. Williams denied saying "thanks for not charging me with PWID" until he was brought before a magistrate. Although Williams stated that he was unaware of the narcotics in the glove compartment, he admitted that he smoked the cigarette brand "Newports."

Before trial, Williams filed a motion to suppress the evidence on the ground that the police improperly impounded his car. The trial court denied the motion. Williams renewed his objection to the impoundment by a motion to strike at the close of all the evidence. Williams also argued that the evidence was insufficient to prove beyond a reasonable doubt that he possessed the cocaine and that he intended to distribute it. The trial court denied the motion to strike and convicted Williams as charged. This appeal followed.

II.  The Vehicle Impoundment Was Proper

Williams contends the vehicle he was driving was illegally impounded and that the fruits of the inventory search were improperly admitted into evidence.[1]  On appeal of the trial court's denial of Williams's motion to suppress, this Court views the evidence in the light most favorable to the Commonwealth, the party prevailing below, and grants to it all reasonable inferences that may be drawn from the evidence.  King v. Commonwealth, 39 Va. App. 306, 307, 572 S.E.2d 518, 518-19 (2002).  This Court gives deference to the trial court's findings of historical fact unless they are plainly wrong or without evidence to support them.  Id. at 309, 572 S.E.2d at 519.  "The burden to establish that the denial of the motion to suppress constituted reversible error rests with the defendant."  Id. at 308, 572 S.E.2d at 519.

Searches and seizures conducted without a warrant are presumptively invalid.  Minnesota v. Dickerson, 508 U.S. 366, 372 (1993).  However, Virginia recognizes a "community caretaker" exception to the general rule.  See King, 39 Va. App. at 309, 572 S.E.2d at 520.  The exception is grounded in the policy considerations recognized by the United States Supreme Court in South Dakota v. Opperman, 428 U.S. 364 (1976), and Cady v. Dombrowski, 413 U.S. 433 (1973).  Those policy considerations include: 1) the protection of the owner's property while it remains in police custody, 2) the protection of police against claims or disputes concerning lost or stolen property, and 3) protection of the public and the police from physical danger.  Reese v. Commonwealth, 220 Va. 1035, 1039, 265 S.E.2d 746, 749 (1980); see generally Opperman, 428 U.S. at 373-76; Cady, 413 U.S. at 442-48.

---

[1]The Commonwealth contends that Williams cannot claim standing to challenge the vehicle's impoundment because the record fails to establish that he had a legitimate expectation of privacy in the glove compartment.  For the purposes of this appeal, we assume without deciding that Williams has standing to challenge the vehicle's impoundment.

Under the community caretaker exception, the police may conduct a warrantless inventory search of a vehicle provided the following conditions are met: 1) the vehicle must be lawfully impounded; 2) the impoundment and subsequent search must be conducted pursuant to standard police procedures; and 3) the impoundment and subsequent search must not be a pretextual surrogate for an improper investigatory motive. King, 39 Va. App. at 310, 572 S.E.2d at 520; see also Servis v. Commonwealth, 6 Va. App. 507, 521, 371 S.E.2d 156, 163 (1988).

Here, the inventory search was conducted pursuant to standard procedures and no evidence establishes that the police had an investigatory motive. The sole remaining question is whether the police properly impounded the vehicle. See Servis, 6 Va. App. at 521, 371 S.E.2d at 163 (noting that "the crux of the issue in this case is whether the defendant's car was lawfully impounded"). We answer the question in the affirmative.

We must consider "not whether there was a need for the police to impound [the] vehicle but, rather, whether the police officer's decision to impound was reasonable under the circumstances." United States v. Brown, 787 F.2d 929, 932 (4th Cir.), cert. denied, 479 U.S. 837 (1986); see also Opperman, 428 U.S. at 372-74. "Objective reasonableness remains the linchpin of determining the validity of action taken under the community caretaker doctrine." King, 39 Va. App. at 312, 572 S.E.2d at 521.

This Court in King found the police impoundment of the defendant's vehicle was unreasonable and improper under the following facts. King was stopped for speeding on a heavily congested highway in Virginia. Id. at 307, 572 S.E.2d at 519. Although King held a valid Maryland driver's license, the police determined that his Virginia license had been suspended for failure to pay parking fines. Id. The police also determined that King was the registered owner of the vehicle. Id. at 312, 572 S.E.2d at 521. Although King's vehicle was legally parked and was not impeding traffic, the police officer who ordered the impoundment

testified that he "'wouldn't put a vehicle there and just leave it there.'" Id. at 307-08, 572 S.E.2d at 519. We held that the police officer's "subjective view" of the propriety of the car's location could not "substitute for objective facts establishing that the public's safety was at risk or that a need to safeguard the vehicle existed." Id. at 311-12, 572 S.E.2d at 521. Because no objective facts supported the officer's determination that the vehicle posed a risk to public safety or that the vehicle and its property needed safeguarding, we held the impoundment unreasonable under the Fourth Amendment. Id. at 313-14, 572 S.E.2d at 522.

Williams contends the decision in King compels reversal here. We disagree. The police stopped Williams in the vehicle, which had a broken window, at three o'clock in the morning in a neighborhood described as an unsafe place to leave the property. Williams could produce neither a registration card evidencing ownership nor a license for him to drive. The trial court did not believe Williams's contention that he told police the car belonged to his girlfriend. See Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented."). Thus, the police were confronted with circumstances in which the owner of the vehicle could not be identified and no one was available at the scene to drive the vehicle, which had a broken window, to another, safer location. Under these circumstances, we find that the decision to impound the vehicle was reasonable.

Other jurisdictions, in which the courts have addressed the question, have come to the same conclusion we reach here. In State v. Peterson, 964 P.2d 1231 (Wash. App. 1998), the defendant was the sole occupant of a car that was pulled over at 2:00 a.m. for expired license tags. Id. at 1232. Peterson was unable to locate the registration or proof of insurance. Id. The officer determined that Peterson's license was suspended and that another individual, John

- 6 -

Brady, owned the car.  Id.  The officer impounded the car without further inquiry of Peterson and without attempting to contact Brady.  Id.  Because "the owner was not present to authorize a licensed and insured driver to remove the vehicle or to authorize leaving the vehicle by the side of the road," the court found the impoundment "was the best approach to protect the police and the property owner and was reasonable under these circumstances."  Id. at 1233; see also United States v. Shareef, 100 F.3d 1491, 1508 (10th Cir. 1996) (finding impoundment proper where no licensed drivers were present and where ownership was not determinable at the scene); United States v. Harvey, 16 F.3d 109, 112 (6th Cir.), cert. denied, 513 U.S. 900 (1994) (finding impoundment proper where, although one of the passengers was the owner of the vehicle, no passenger possessed valid driver's license); United States v. Stocks, 594 F.2d 113, 114 (5th Cir. 1979) (per curiam) ("It was proper to impound the vehicle for which no proper proof of ownership could be produced."); Madison v. United States, 512 A.2d 279, 281 (D.C. App. 1986) (holding impoundment proper after arrest for traffic violations because defendant could not produce a registration for the car and denied ownership); State v. Weeks, 563 P.2d 760, 762 (Or. App. 1977) (holding impoundment of vehicle was reasonable where legal owner was not present and no one at the scene could establish possession of the car with legal owner's consent); 3 Wayne R. LaFave, Search and Seizure § 7.3(c), at 523 n.65 (3d ed. 1996 & Supp. 2004).

Williams also contends that the vehicle's impoundment was invalid because the police failed to ask him whether he could arrange to have the car moved to another location. Williams's reliance on our decision in King for the stated proposition is misplaced.  King does not support the argument Williams makes, and we decline to adopt the principle he espouses.  3 LaFave, *supra*, at 527 ("[T]o be reasonable under the Fourth Amendment, the arresting officer should be required . . . to comply with any reasonable alternative disposition *requested*." (emphasis added)).  The fact that the police officer "made no inquiry" of the owner in King about

alternative arrangements for safeguarding the car, 39 Va. App. at 312, 572 S.E.2d at 521, was not dispositive; it was merely one factor we considered under the circumstances of that case in determining the reasonableness of the impoundment. Here, Williams could not prove ownership of the vehicle. Moreover, the car had a broken window and was parked on a public road in a high crime area. The totality of evidence therefore militates against a finding of unreasonableness in this case.

We, therefore, affirm the trial court's decision that the impoundment was lawful because, under the circumstances of the instant case, we find that the officer's action to safeguard the vehicle by impounding it was entirely reasonable.

### III. The Evidence Was Sufficient to Prove Williams Possessed the Cocaine Found in the Glove Compartment

Williams argues the evidence was insufficient to support a finding that he possessed the cocaine recovered from the glove compartment. We disagree.

### A. Standard of Review

When reviewing a sufficiency of the evidence claim on appeal, the function of this Court is to evaluate whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis added). Accordingly, the Court looks "to that evidence which tends to support the verdict and to permit the verdict to stand." Snyder v. Commonwealth, 202 Va. 1009, 1016, 121 S.E.2d 452, 457 (1961). We must therefore "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth." Holsapple v. Commonwealth, 39 Va. App. 522, 528, 574 S.E.2d 756, 758-59 (2003) (en banc) (citations omitted). "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the

- 8 -

judgment is plainly wrong or without evidence to support it." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). Moreover, "the credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732.

## B. Williams Constructively Possessed the Cocaine

"In order to convict a person of illegal possession of an illicit drug, the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused consciously possessed it." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1998). The Commonwealth need not prove actual possession, however.

> [P]roof of constructive possession will suffice. Constructive possession may be established when there are "'acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'"

Id. at 426, 497 S.E.2d at 872 (quoting Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (quoting Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984))) (alteration in original). The accused's proximity to an illicit drug and occupancy of the premises where the drug is found, while not sufficient to establish dominion and control of the substance, are factors that may be considered in deciding whether an accused possessed the drug. Id.; Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982). To resolve the issue, the Court must consider the totality of the circumstances established by the evidence. Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997) (citing Womack v. Commonwealth, 220 Va. 5, 8, 255 S.E.2d 351, 353 (1979)).

The trial court's finding that Williams was aware that drugs were present in the car is amply supported by the evidence. The police discovered the "Newports" cigarette box

containing twenty-four individually wrapped baggies of cocaine "sitting right on the edge [of the glove compartment] as soon as you opened" it. The box was open with plastic baggies "sticking out of it." The glove compartment was within Williams's reach. Indeed, the evidence showed that Williams opened the glove compartment in search of the registration. Williams's testimony also established that he smoked the "Newports" brand of cigarettes found in the glove compartment. Furthermore, when Williams was arrested and charged with a possession offense, he thanked Officer McLean for not charging him with "PWID." The trial court properly and reasonably concluded from the evidence, viewed in its totality, that Williams was aware of the presence and character of the drugs and that he exercised dominion and control of the drugs. See Copeland v. Commonwealth, 42 Va. App. 424, 440, 592 S.E.2d 391, 398 (2004). We accordingly affirm the trial court's finding that the evidence was sufficient to prove Williams possessed the cocaine because it was not plainly wrong or without evidence to support it. Id.; Martin, 4 Va. App. at 443, 358 S.E.2d at 418.

### IV. The Evidence Was Sufficient to Prove Williams Possessed the Cocaine with the Intent to Distribute

Williams's final argument asserts that the evidence failed to establish he intended to distribute the cocaine. We find that the amount of the cocaine found in Williams's possession, considered together with its packaging and Williams's statement to the police at the time of his arrest, proved his intent to distribute beyond a reasonable doubt.

The standard of review for this sufficiency claim remains the same. See *supra* Part III.A. "Because direct proof of [the] intent [to distribute] is often impossible, it must be shown by circumstantial evidence." Servis, 6 Va. App. at 524, 371 S.E.2d at 165. "'Possession of a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it.'" Gregory v. Commonwealth, 22 Va. App. 100, 110, 468 S.E.2d 117, 122 (1996) (quoting Iglesias v. Commonwealth, 7 Va. App. 93, 110, 372 S.E.2d 170,

180 (1988) (en banc)). The manner in which the drug is packaged is also relevant to the question. Id.; Servis, 6 Va. App. at 524, 371 S.E.2d at 165.

Detective Holly, an expert qualified to testify to the use, packaging, and distribution of narcotics, stated that the cocaine from the glove box was inconsistent with personal use because it was not in "block form" and the "rocks" were individually wrapped. Holly explained that a personal user would not possess cocaine in the individually wrapped packages found in Williams's possession because a user "could get almost twice as much drugs" were it bought in block form. Holly also noted that the individually wrapped packages, containing what appeared to be a ten-dollar rock in each, supported his opinion that the drugs were inconsistent with personal use. Expert opinion "can be considered by the fact finder together with other evidence to determine whether the Commonwealth's evidence proved beyond a reasonable doubt the intent to distribute." Askew v. Commonwealth, 40 Va. App. 104, 111, 578 S.E.2d 58, 62 (2003); see also Shackleford v. Commonwealth, 32 Va. App. 307, 327, 528 S.E.2d 123, 133 (2000) (noting that the trial court properly considered, as evidence of intent to distribute, the amount of drugs possessed, the absence of drug paraphernalia, and the packaging of the drugs). Accordingly, based on Holly's testimony, the absence of drug paraphernalia, and Williams's unsolicited reference to the charge of "PWID," we find that the trial court properly concluded that the evidence established beyond a reasonable doubt that Williams possessed the drugs with the intent to distribute. Because credible evidence supports Williams's conviction, we will not disturb it on appeal.

V. Conclusion

We hold that the police properly impounded the vehicle which Williams was driving because he could produce neither proof of ownership nor a valid driver's license when he was stopped in the early morning hours in a vehicle with a broken window in an area that was not

- 11 -

suitable for the vehicle's safekeeping.  We also find that the evidence presented at his trial was sufficient to prove beyond a reasonable doubt that Williams possessed cocaine with the intent to distribute it.  Accordingly, we affirm the trial court's judgment.

<u>Affirmed.</u>