COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Beales
Argued at Richmond, Virginia


KELVIN WATSON

v.       Record No. 2583-06-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE JEAN HARRISON CLEMENTS
NOVEMBER 13, 2007


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge[1]

Michael E. Hollomon for appellant.

J. Robert Bryden, II, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Kelvin Watson (appellant) was convicted in a bench trial of possession of cocaine with

the intent to distribute, in violation of Code § 18.2-248.  On appeal, he contends the trial court

erred (1) in denying his motion to suppress the cocaine and drug paraphernalia found in his

pockets by the police in violation of his Fourth Amendment rights, and (2) in finding the

evidence sufficient to support his conviction.  Finding no error, we affirm the trial court's

judgment and appellant's conviction.

As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Honorable Marc Jacobson presided at the hearing on appellant's motion to
suppress.

# I. BACKGROUND

The relevant facts in this case are not in dispute. On September 12, 2005, at about 10:00 p.m., officers of the Richmond Police Department patrolled Dove Court, an area owned by the Richmond Redevelopment and Housing Authority (RRHA). The officers were dressed in plain clothes and wore placards on their shirts labeled "Richmond Police." They pulled to the curb in two unmarked vehicles and saw appellant standing between apartment buildings on RRHA property. Where appellant stood, two illuminated signs read, "No Trespassing by order of RRHA." Appellant appeared to be talking on his cellular phone.

From the police vehicles, one of the officers yelled to appellant, asking, "Can I get a 20," indicating that he wanted to purchase "a $20 rock of crack cocaine" from appellant. Detective Robert Sprinkle, another officer present in one of the police vehicles, observed appellant hold up his index finger in response, believing appellant gestured to "hang on a minute." Then appellant walked towards the car and hung up his phone. At this point, Detective Sprinkle believed appellant was going to sell them narcotics. Before appellant reached the officers' vehicles, two of the officers exited their car, approached appellant, and asked him if he could talk for a minute. Appellant halted, turned, and ran down the sidewalk.

Continuing their investigation of appellant, the officers pursued him for 20 to 30 yards until they caught and handcuffed him. The officers asked appellant if he resided at Dove Court, and he responded "no." Subsequently, they arrested him for trespassing. Detective Sprinkle searched his person, finding two and one-half grams of crack cocaine in appellant's breast pocket, as well as a needle and spoon in his back pocket. Appellant was charged with possession of cocaine with the intent to distribute. He moved to suppress the items found incident to his arrest.

Detective Sprinkle testified at the suppression hearing that RRHA and Richmond police work "very closely" to "combat" high crime, drugs, and violence in areas like Dove Court and that drug transactions commonly occur on the street near Dove Court. He further testified that RRHA granted Richmond police the authority to arrest people for trespassing on its properties and that a guest engaged in drug transactions on RRHA property would be considered a trespasser. Detective Sprinkle described a typical drug transaction in the Dove Court area, as follows:

> Typically a person would pull up in a vehicle, park at the curb. Either there's somebody physically on the property or just off the property on the sidewalk that will make contact with the vehicle. That person will tell whoever they're talking to what they specifically want and the transaction will be made right there.

In support of appellant's motion, he argued that the officers had no probable cause to arrest for trespassing, that, "at best," the officers had only reasonable suspicion that appellant trespassed, and that the pat down of appellant was without reasonable suspicion that he was armed and dangerous. The trial court denied appellant's suppression motion.[2]

At trial, appellant testified that he was a cocaine and heroin user and on average, his daily drug use consisted of approximately one to two grams of cocaine, one-half gram of heroin, and "maybe a pint" of alcohol.

Detective Sprinkle testified as an expert in the packaging and distribution of cocaine. He stated that "[g]enerally people that use cocaine will buy it in anywhere from one rock which is generally a tenth of a gram to five [rocks], maybe even up to a gram, and then use that as quickly as possible" and that most users do not have enough money to purchase more than one gram at a

---

[2] Although the basis for the trial court's denial is not entirely clear from its ruling, the court remarked that in considering "the totality of the circumstances," including the credibility and demeanor of Detective Sprinkle and the flight of the appellant, the initial reason for appellant's detainment was the officer's belief that a drug transaction was taking place.

- 3 -

time.  A one-gram piece of cocaine is typically divided into ten rocks and sold for $10 each.

Each rock is packaged "in the corner of a plastic bag and tied off and knotted."  Detective

Sprinkle further testified that when a seller possesses a larger piece of cocaine together with

smaller $10 chunks, he uses the larger portion to break off $7 or $8 rocks for buyers having less

than $10.

In Detective Sprinkle's opinion, appellant's drug possession was "inconsistent with

personal use" considering the weight and packaging of the cocaine he possessed and the "high

drug" environment of Dove Court.  Appellant's two and one-half grams consisted of nine rocks,

comprised of one large piece and then smaller individually wrapped pieces, worth a total street

value of $250.  Sprinkle also stated that drug users do not generally combine cocaine and heroin

use.  A heavy user combining cocaine, heroin, and alcohol would exhibit physical effects such as

rotten and falling-out teeth, extreme loss of weight, and would be generally "unkempt" and

"dirty."  Appellant exhibited no such characteristics on the day of his arrest.

The trial court found appellant guilty of possessing cocaine with the intent to distribute.

This appeal followed.

## II.  MOTION TO SUPPRESS

Appellant contends the trial court erred in denying his motion to suppress the cocaine and

drug paraphernalia found by police where his arrest, pat down, and search of his pockets violated

his Fourth Amendment rights.  We disagree.

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the

appellant] to show that th[e] ruling, when the evidence is considered most favorably to the

Commonwealth, constituted reversible error.'"  McGee v. Commonwealth, 25 Va. App. 193,

197, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Fore v. Commonwealth, 220 Va. 1007,

1010, 265 S.E.2d 729, 731 (1980)).  "'Ultimate questions of reasonable suspicion and probable

cause to make a warrantless search' involve questions of both law and fact and are reviewed *de novo* on appeal." Id. (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)). Thus, while "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers," id. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699), "we review *de novo* the trial court's application of legal standards such as reasonable suspicion to the particular facts of the case," McCracken v. Commonwealth, 39 Va. App. 254, 258, 572 S.E.2d 493, 495 (2002) (en banc).

In addressing an officer's authority to conduct an investigatory stop or make an arrest based on probable cause, a court must consider the totality of the circumstances. See Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005); Walker v. Commonwealth, 42 Va. App. 782, 790, 595 S.E.2d 30, 34 (2004). "The circumstances that a court can consider when determining whether an officer had reasonable suspicion include the nature of the area in which the stop occurred, the time of day, the conduct and demeanor of the suspect, and the type of offense that the officer was investigating." Walker, 42 Va. App. at 791-92, 595 S.E.2d at 35. Furthermore, we assess the existence of probable cause or reasonable suspicion by applying an objective rather than subjective standard. See, e.g., Whren v. United States, 517 U.S. 806, 812-13 (1996).

Applying these principles to the circumstances of this case, the evidence proved that Detective Sprinkle had reasonable, articulable suspicion to conduct an investigatory stop of appellant for the crime of trespassing.[3]

---

[3] Appellant conceded at oral argument that his flight coupled with the posted "No Trespassing" signs provided the officer with reasonable, articulable suspicion to stop and detain him.

- 5 -

Code § 18.2-119 provides, in relevant part, as follows:

> If any person without authority of law goes upon or remains upon the lands, buildings or premises of another, . . . after having been forbidden to do so by a sign or signs posted by such persons . . . at a place or places where it or they may be reasonably seen, . . . he shall be guilty of a Class 1 misdemeanor.

Pursuant to Code § 18.2-119 and the agreement with RRHA, Richmond police officers were authorized to enforce trespassing laws on RRHA property where individuals violate the posted "No Trespassing" signs. Accordingly, the Richmond police patrolled areas like Dove Court to prevent trespassers from dealing drugs and conducting other illegal activity on RRHA property.

Here, illuminated and visible signs posted where appellant stood clearly stated "No Trespassing." Appellant's presence on RRHA property at night, his response to the officer's request for a "20" by holding up his index finger, and his approach of the officers' vehicles all corresponded to Detective Sprinkle's description of exactly how drug transactions occur on RRHA property. Detective Sprinkle testified that he believed appellant was attempting to sell the officers narcotics and that under no circumstance, could a legitimate guest remain on RRHA property and have permission to sell drugs. Moreover, appellant's flight in this context, while "not necessarily indicative of wrongdoing," is "the consummate act of evasion." Illinois v. Wardlow, 528 U.S. 119, 124 (2000).

Additionally, the fact that Detective Sprinkle "d[id] not have the state of mind which is hypothecated by the reasons which provide the legal justification" for his actions "does not invalidate the action taken as long as [all] the circumstances, viewed objectively, justify that action." Fox v. Commonwealth, 43 Va. App. 446, 450, 598 S.E.2d 770, 771 (2004) (citations omitted). Thus, Detective Sprinkle's testimony indicating that he initially suspected appellant of conducting a drug transaction does not discount the facts also proving the existence of reasonable

suspicion for trespassing. Therefore, the officers had reasonable, articulable suspicion to stop appellant for trespassing.

Following appellant's detainment, he admitted to Detective Sprinkle that he did not reside at Dove Court, thus, giving the officers probable cause to arrest him for trespassing. Accordingly, Detective Sprinkle effectuated a lawful arrest of appellant and, as Detective Sprinkle made clear in his testimony, he conducted a search incident to the arrest for trespassing. See McCain v. Commonwealth, 261 Va. 483, 492, 545 S.E.2d 541, 546 (2001); Slayton v. Commonwealth, 41 Va. App. 101, 108, 582 S.E.2d 448, 451 (2003). Therefore, the trial court did not err in denying suppression of the cocaine, needle, and spoon found on appellant's person incident to the lawful search.

Appellant also contends, that even if he trespassed, the officers could only issue a summons for the misdemeanor violation. However, appellant did not make this argument to the trial court. Pursuant to Rule 5A:18, we "will not consider an argument on appeal [that] was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). We hold, therefore, that appellant is barred by Rule 5A:18 from raising this claim for the first time on appeal.

### III. SUFFICIENCY OF THE EVIDENCE

Appellant maintains the trial court erred in finding the evidence sufficient to prove he had the intent to distribute the drugs found on his person. We disagree with appellant.

In reviewing the sufficiency of the evidence to support a conviction, "we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense." Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999). We will affirm the conviction "unless it is plainly wrong or

without evidence to support it." Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 906 (2001).

To convict a defendant of possession with intent to distribute an illegal substance, the Commonwealth must prove beyond a reasonable doubt that the defendant intended to distribute the substance that he possessed. See Williams v. Commonwealth, 42 Va. App. 723, 737, 594 S.E.2d 305, 312 (2004). "Possession with intent to distribute is a crime which requires 'an act coupled with a specific intent.'" Dunbar v. Commonwealth, 29 Va. App. 387, 393, 512 S.E.2d 823, 826 (1999) (quoting Stanley v. Commonwealth, 12 Va. App. 867, 869, 407 S.E.2d 13, 15 (1991)). "Because direct proof of intent is often impossible, it must be shown by circumstantial evidence." Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988). Expert testimonial evidence may be considered in determining whether a defendant intended to distribute an illegal substance. Davis v. Commonwealth, 12 Va. App. 728, 733, 406 S.E.2d 922, 925 (1991). "The quantum of evidence necessary to prove an intent to distribute depends on the facts and circumstances of each case." Askew v. Commonwealth, 40 Va. App. 104, 110, 578 S.E.2d 58, 61 (2003).

Viewed in the light most favorable to the Commonwealth, the circumstantial evidence presented at trial proved that the officers saw appellant on RRHA property, at night in a high-drug and high-crime area. Appellant responded to a request for a "20" by approaching the officers and then fled when he saw they were officers. Following appellant's arrest, the officers found "a little over two-and-a-half grams" of crack cocaine in appellant's pocket, consisting of one large piece and eight smaller individually wrapped rocks, with a street value of $250. At trial, Detective Sprinkle testified as an expert in cocaine packaging and distribution and opined that appellant's possession was "inconsistent with personal use" based on its weight and packaging. He also stated that users typically buy anywhere from one-tenth of a gram up to a

gram of cocaine at a time, but no more due to economic factors.  Furthermore, appellant had none of the physical characteristics normally associated with someone who consumed the amount of drugs appellant stated he did.

The trial court could properly conclude from this evidence that appellant intended to distribute the cocaine found on his person.  See McCain, 261 Va. at 493, 545 S.E.2d at 547 (finding that the quantity of the drugs discovered and the manner in which they are packaged are indicia of distribution); Iglesias v. Commonwealth, 7 Va. App. 93, 110, 372 S.E.2d 170, 180 (1988) (en banc) (holding that possession of an illegal substance in an amount exceeding that which is ordinarily possessed for personal use may sufficiently establish a defendant's intent to distribute that substance).  We hold, therefore, that the trial court did not err in finding the evidence sufficient to prove appellant had the intent to distribute the drugs in his possession.

## IV.  CONCLUSION

For these reasons, we affirm the judgment of the trial court and appellant's conviction.

Affirmed.