4

# CIRCUIT COURT OF THE CITY OF PETERSBURG

Commonwealth of Virginia

v.

Daquan Glenn

March 7, 2016

Case Nos. CR15-576 and CR15-547

By JUDGE JOSEPH M. TEEFEY, JR

This day came the defendant, by counsel, Mary K. Martin, and moved this Court to suppress evidence seized by police during an inventory search of the defendant's vehicle. The Court received evidence *ore tenus* and considered the memorandum of law filed by each party.

### Statement of Facts

Officer Carter of the Petersburg Police Department initiated a traffic stop of the defendant's vehicle on April 10, 2015, after observing the defendant fail to use a turn signal and for stopping in a travel lane. The parties stipulated to the introduction of a video and audio recording of the stop and encounter taken from the officer's body camera. The video recording revealed that traffic was busy on the road where the defendant stopped his vehicle, thereby obstructing the regular flow of vehicular traffic on that road.

The defendant was immediately cooperative with the officer by relinquishing his firearm and admitting to the officer that his driver's license was suspended and he had prior convictions for driving on a suspended driver's license. The officer ordered the defendant to exit the vehicle and stand a few feet away from the vehicle. The officer was delayed fifteen minutes in conducting a radio verification of the defendant's license and status by radio because there was heavy radio traffic at the time of the stop. After radio dispatch confirmed the defendant's license was suspended, the officer returned to the vehicle and began to search the interior without

explanation of the reason for the search. At the hearing, the officer testified that he was conducting an inventory search because it was written department policy to impound a vehicle driven by a suspended driver.

The officer searched the entire interior of the vehicle including floorboards, under seats, door side storage areas, center console, and the glove compartment. The officer opened and inspected containers, leafed through papers, and felt around areas not visible such as seat folds and underneath seats. The officer found a plastic bag containing a liquid that the officer suspected was hydrocodone. He immediately instructed the police officer accompanying him to handcuff the defendant then resumed the interior search. The officer showed the bag containing the liquid to the defendant at the conclusion of the search of the vehicle. The defendant denied any knowledge of the bag or contents, but he did inform the officer that he had marijuana in his pocket.

The officer field tested the marijuana which was positive, so he issued a summons to the defendant for the marijuana possession and driving on a suspended license. He further informed the defendant that he would submit the liquid to the state laboratory for testing. This concluded the search and processing, approximately one hour after the traffic stop. The officer asked the defendant if any of his family members who arrived during the stop could drive the vehicle from the scene. He released the vehicle to a family member without ever calling for a tow truck or taking any active steps towards impounding the vehicle.

The Commonwealth did not submit the Petersburg Police Department's written policy regarding impounding vehicles or their written policy regarding vehicle inventory searches. The video did not show the officer completing any paperwork or taking notes during the course of the inventory search to document any of the vehicle contents, and the Commonwealth did not produce any documents during the hearing that were completed by the officer after the video concluded. The items inspected by the officer were papers, compact disks, and miscellaneous items without value inside the glove compartment and center console. The officer did, however, have an exchange with the defendant about cash found on his person and where the defendant received the cash.

*Analysis*

Searches and seizures conducted without a warrant are presumptively invalid and unreasonable. *See, Minnesota v. Dickerson,* 508 U.S. 366 (1993). However, an exception to the warrant requirement of the Fourth Amendment is the community caretaker function served by police officers. *See Cady v. Dombrowski,* 413 U.S. 433 (1973). The relevant community caretaker function analyzed in the present case is the law enforcement officer's authority to remove a vehicle that impedes vehicular traffic on

the public highways or threatens public safety and convenience. *See South Dakota v. Opperman*, 428 U.S. 364 (1975).

This inventory exception to the warrant requirement may only be invoked by the prosecution if the following conditions are met as detailed in *Williams v. Commonwealth*, 42 Va. App. 723 (2004): (1) the vehicle must be lawfully impounded; (2) the impoundment and subsequent search must be conducted pursuant to standard police procedures; and, (3) the impoundment and subsequent search must not be a pretextual surrogate for an improper investigatory motive. This Court finds that the vehicle was lawfully impounded for a violation of Va. Code § 46.2-301 because § 46.2-301.1 authorizes vehicle impoundment for violations of driving on a suspended license. Furthermore, the impoundment was completely necessary in this case when the defendant elected to stop the vehicle in a public highway travel lane thereby obstructing the flow of traffic and creating a safety hazard to other drivers.

This Court next turns to the controlling issues in this case, whether the Commonwealth satisfies her burden of proof on the second and third prongs of the *Williams v. Commonwealth* test. The second prong requires proof from the Commonwealth that the warrantless inventory search was conducted by the officer according to standardized department procedures that limit his discretion while conducting the search. The underlying justification for the warrantless search pursuant to the community caretaker inventory exception is that the standardized procedures sufficiently limit the searching officer's discretion, thereby, preventing his search from developing into "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). The written department policy can only allow officer discretion as necessary to effectuate the purpose of an inventory search; otherwise, the officer's intent could devolve into "a purposeful and general means of discovering evidence of crime." *Id.* (quoting *Colorado v. Bertine*, 479 U.S. 367, 376 (1987) (Blackmun, J., concurring).

The Court of Appeals of Virginia in *Cantrell v. Commonwealth*, 65 Va. App. 53 (2015), conducted a recent analysis of cases examining the adequacy of police department standard procedures governing inventory searches that were contested in this Commonwealth. In each case, as in *Cantrell*, the trial court record provided details of the applicable department procedures either through the introduction of the written procedures or testimony of the officer describing the standard procedures. In fact, the existence of standard procedures may be proven by reference to rules and regulations of the department or testimony regarding standard practices. *Matthews v. United States*, 591 F.3d 230 (4th Cir. 2007), citing *United States v. Thompson*, 29 F.3d 62 (2d Cir. 1994). The record before this Court provides only an assertion by the officer that the Petersburg Police Department has written procedures without any further evidence of these procedures.

Since the Commonwealth bears the burden of proof to overcome the presumption against the warrantless search and seizure conduced in this case, her failure to introduce the department's written procedures or testimony providing details of the procedures is fatal. This Court or any trial court conducting the applicable analysis must, as a threshold step, reference the policy to determine if the procedures detailed in fact limit officer discretion. Next, the trial court must compare the police officer's actions while conducting the inventory search to the proscriptions provided by his department policy. In so doing, courts do not insist that an officer conduct inventory searches in a totally mechanical fashion. *Florida v. Wells*, 495 U.S. 1 (1990). However, the Commonwealth must provide some reference point for a comparison of actions to procedures. This Court is unable to conduct the required review of the department procedures due to the void in the record resulting from the Commonwealth's failure to produce the requisite evidence. This failure of proof ends this Court's analysis and does not allow for further examination of officer actions and motives relevant to pretext as required by the third prong of the *Williams* test.

## Conclusion

Due to the Commonwealth's failure to present sufficient evidence supporting her claimed exception to the warrant requirement of the Fourth Amendment, this Court must apply the presumption that the warrantless search was unreasonable. For this reason, the Court directs that the Commonwealth is prohibited at trial from presenting into evidence the hydrocodone seized from the interior of the defendant's vehicle and any analysis conducted on said substance. The Court does not apply this finding to the marijuana that the officer seized from the defendant's person, because this was not derivative of the illegal search and thereby not controlled by the doctrine announced in *Wong Sun v. United States*, 371 U.S. 471 (1963). Instead, the defendant voluntarily revealed the location of the marijuana to the officer and consented to the officer's lawful seizure of this illegal substance.