# COURT OF APPEALS OF VIRGINIA

### Record No. 1494-24-1

TION SCOTT ASHBY

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Causey, White and Frucci

Argued at Virginia Beach, Virginia

Opinion Issued April 28, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Andrew D. Kubovcik, Judge[1]

Monica Tuck, Assistant Public Defender (Kelsey Bulger, Deputy Appellate Counsel; Virginia Indigent Defense Commission, on brief), for appellant.

Rachel A. Glines, Assistant Attorney General (Jason S. Miyares,[2] Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE STEVEN C. FRUCCI

Following a jury trial, Tion S. Ashby was convicted of possession of cocaine with intent to distribute, second offense. The circuit court sentenced Ashby to five years of incarceration, with two years suspended. Following, the circuit court also found Ashby guilty of four counts of probation violation, revoked his previously suspended sentences of four years, forty-two months, and twenty days of incarceration, and resuspended four years and one month. On appeal, Ashby

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Judge Kubovcik presided over the jury trial, found Ashby in violation of his probation, and sentenced Ashby. Judge Timothy S. Wright presided over and ruled on the motion to suppress that is also at issue in this appeal.

[2] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

argues that the circuit court erred in denying his motion to suppress the evidence obtained from the truck he was driving the night of the offense. As he argues that the new conviction was the sole basis of his probation violation convictions, he contends that the circuit court also erred in revoking his suspended sentences. For the following reasons, we affirm the circuit court's judgment.

## BACKGROUN D[3]

On December 1, 2022, Chesapeake Police Officers Tindle[4] and Sullivan were on patrol when they noticed a pick-up truck driving erratically by slamming on its brakes, accelerating at a high speed over a bridge, and then again slamming on its brakes. The driver, later identified as Ashby, was the sole occupant. After a traffic light turned green, Ashby waited ten seconds before moving. After pacing the vehicle and determining that it was driving approximately eight miles under the speed limit, the officers activated their patrol car lights. Ashby drove on for about forty seconds before pulling into the parking lot of a closed mechanic shop around 7:28 p.m.[5]

---

[3] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Cady*, 300 Va. at 329. Further, "this Court's 'review of the record includes evidence adduced at both the trial and the suppression hearing.'" *Fauntleroy v. Commonwealth*, 62 Va. App. 238, 244 (2013) (quoting *Greene v. Commonwealth*, 17 Va. App. 606, 608 (1994)).

[4] The transcript from a suppression hearing lists the officer's last name as "Tindle," while the jury trial transcript refers to the officer as "Tindall." The parties do not argue that the officer at the trial hearing was a different officer from that at the suppression hearing; therefore, this opinion will refer to this officer as Officer Tindle.

[5] Though he does not contest the justification for the stop on appeal, during oral arguments, Ashby's counsel asserted it was just this forty seconds of improper driving that resulted in the stop of his vehicle. However, while not necessary to justify the traffic stop, the stated facts above show an erratic pattern of driving far before that final forty seconds.

Ashby parked the truck in the middle of the shop's parking lot in a manner that blocked access to the bay garage. Due to this, according to Officer Tindle, "if the business was open, the bay door wouldn't have been able to be used, and there were no parking spaces. No one there could use the portion of the parking lot." Officer Tindle ran a records check and found that Ashby was not a licensed driver. Accordingly, Officer Tindle informed Ashby that because he had no license, he could not drive the truck, so it would be towed. Officer Tindle asked Officer Sullivan to call for a tow truck because Ashby's truck was a traffic hazard.

At that point, Ashby told Officer Tindle that his wife, who was the registered owner of the truck, would come to pick it up. Officer Tindle responded that if Ashby's wife arrived before the tow truck, she could take the vehicle. However, Officer Tindle had determined that the truck should be towed and believed that a prompt inventory of the truck complied with the Chesapeake Police Department's written inventory procedures. Officer Tindle characterized the inventory procedures by stating that when officers "make the decision to tow, an inventory must be completed as soon as possible." Specifically, the policy stated that: "Officers shall conduct a motor vehicle inventory as soon as reasonably possible after the decision is made to tow the vehicle."[6]

When Officer Tindle began an inventory search, he came upon a small plastic baggie in the cupholder that appeared to contain crack cocaine. The officers then handcuffed Ashby and read him his *Miranda*[7] rights, and Officer Tindle resumed searching.[8] Officer Tindle found a backpack

---

[6] The Commonwealth introduced the written policy at the suppression hearing.

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[8] At the suppression hearing, Officer Tindle acknowledged that at that point he was no longer conducting an inventory search.

behind the driver's seat; it contained a scale with residue and multiple baggies of crack cocaine and a white powdery substance he suspected was cocaine.[9]

Ashby's wife arrived at the scene at about 7:55 p.m., or about twenty minutes after Officer Sullivan called for a tow truck. Officer Tindle testified that nothing in the written policy disallowed it, so he cancelled the tow and permitted Ashby's wife to take possession of the truck. Officer Tindle, who recalled he had prior dealings with Ashby as he was running his records check, explained that he canceled the tow because he thought Ashby and his wife "were having a hard time so [to] force them to go through the process of . . . tow fees and things of that nature, I believed it would be best to release it to her."

Ashby subsequently was charged with possession of cocaine with intent to distribute, second offense. He moved to suppress the evidence obtained from the search of his truck, arguing in part that his vehicle was unlawfully impounded and that the search was pretextual. The circuit court denied his motion. The case was then tried before a jury, and Ashby was convicted of the charge.

Ashby had been on supervised probation after being convicted of possessing cocaine, a schedule I or II controlled substance, obstructing justice, driving a motor vehicle with a revoked or suspended license, and driving while under the influence in 2021. In part because of this new conviction, a major violation report and an addendum to the report had been filed, resulting in Ashby being charged with violating his probation. At the revocation hearing, Ashby stipulated, while preserving his right to appeal, that the new conviction placed him in violation of his probation. The circuit court found him in violation, revoked the balance of the suspended sentences of four years, forty-two months, and twenty days, and resuspended four years and one month. Ashby appeals.

---

[9] Subsequent forensic analysis showed Officer Tindle recovered 18.39 grams of cocaine.

ANALYSIS

Ashby contends that the circuit court erred in denying his motion to suppress because the "search of the truck he was driving was unlawful." Specifically, he claims that the search of his truck violated his Fourth Amendment rights, arguing that his truck was not lawfully impounded and that the search was the result of improper investigative motives.

On appeal, "'[i]n considering a trial court's ruling on a suppression motion, we view the evidence in the light most favorable to the prevailing party below, the Commonwealth in this instance,' and this Court's 'review of the record includes evidence adduced at both the trial and the suppression hearing.'" *Fauntleroy v. Commonwealth*, 62 Va. App. 238, 244 (2013) (quoting *Greene v. Commonwealth*, 17 Va. App. 606, 608 (1994)). A Fourth Amendment claim "presents a mixed question of law and fact that we review *de novo* on appeal." *King v. Commonwealth*, 49 Va. App. 717, 721 (2007). In conducting our review, we are "bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence," however, we review "the trial court's application of the law de novo." *Malbrough v. Commonwealth*, 275 Va. 163, 168-69 (2008). *See also Turay v. Commonwealth*, 79 Va. App. 286, 296 (2023) (en banc). It is the appellant's burden to show that the circuit court's denial of his suppression motion, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error. *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017).

A. Impoundment

Ashby argues that his truck was unlawfully impounded because it was not a traffic hazard. "The validity of the impoundment is a question separate from the validity of the subsequent inventory search and must be determined first." *King v. Commonwealth*, 39 Va. App. 306, 311 (2002). "Both the literal text of the Fourth Amendment and its historical context establish that the 'ultimate touchstone of the Fourth Amendment is "reasonableness."'"

*Commonwealth v. Hubbard*, 304 Va. 400, 411 (2025) (quoting *Riley v California*, 573 U.S. 373, 381 (2014)). The reasonableness test applies equally in assessing the validity of an impoundment. "We must consider 'not whether there was a need for the police to impound [the] vehicle, but, rather, whether the police officer's decision to impound was reasonable under the circumstances.'" *Williams v. Commonwealth*, 42 Va. App. 723, 731 (2004) (alteration in original) (quoting *United States v. Brown*, 787 F.2d 929, 932 (4th Cir. 1986)).

Here, the police stopped Ashby's truck at about 7:28 p.m. on December 1, 2022. As Ashby acknowledges on brief, he parked the truck in such a way as to prevent access to the bay garage and the business's parking spaces. The officers determined that Ashby did not have a driver's license, and there was no one else at the scene who was licensed and could drive the truck. At that point, Officer Tindle told Ashby he would tow the vehicle. Officer Tindle determined that towing the truck away was appropriate because it "would have been impeding the parking lot. There would have been no way for the parking lot to actually operate."[10]

The Chesapeake Police Department Towing and Inventory of Motor Vehicles policy provided that: "Vehicles deemed traffic hazards shall be towed by a private wrecker service from the police department's approved wrecker service list and an inventory of the contents shall be completed." The policy further mandated that "these procedures shall be followed without exception."

Ashby does not challenge the policy or the fact that officers have discretion under the policy to reasonably determine whether a vehicle represents "a traffic hazard." Rather, his sole

---

[10] Although the lawfulness of an officer's actions is determined by an objective assessment of the circumstances, *see Mason v. Commonwealth*, 291 Va. 362, 368-69 (2016), we note that Officer Tindle believed his actions complied with the police policy. In *King*, we stated that an officer's "subjective view that he 'wouldn't put a vehicle there and just leave it there' [did] not substitute for objective facts establishing that . . . a need to safeguard the vehicle existed." 39 Va. App. at 311-12.

contention is that Officer Tindle wrongly deemed his truck was such a hazard.[11] Under the attendant circumstances, the record supports the finding that the officer's determination was reasonable. The fact that the business was closed does not alone establish the truck was not a traffic hazard. As the Commonwealth pointed out at the suppression hearing, if a driver wanted to make an overnight drop-off at the business, he would be unable to do so because Ashby's truck blocked the parking spaces and the garage bay. Notably, at the suppression hearing, defense counsel responded "Fair enough" when the circuit court suggested that the protection of the business was a legitimate interest. Further, Ashby being unable to lawfully move the vehicle left the police with no assurance that the truck would not remain in the lot for hours and prevent access to the building and garage. Accordingly, Officer Tindle's decision to impound the truck due to it being a traffic hazard was reasonable. *See also Butler v. Commonwealth*, 31 Va. App. 614, 618-19 (2000) (decision to impound was reasonable, given that driver had wrongly parked in gated garage of apartment complex and no other licensed driver was present to remove vehicle); *Servis v. Commonwealth*, 6 Va. App. 507, 520-23 (1988) (impoundment was lawful when a car was lawfully parked in motel parking lot, motel clerk had requested its removal, and defendant's availability after his processing from arrest to move the car after it would no longer be legally parked was uncertain).

B. Inventory search

"[I]inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). When a vehicle is impounded, inventory searches are routinely carried out. *Cady v. Dombrowski*, 413 U.S. 433,

---

[11] In making this argument, Asbhy relies on this Court's analysis in *King v. Commonwealth*, 39 Va. App. 306 (2002). However, the circumstances here differ from those in *King*. The car in *King* was "properly parked," and "neither obstructed the free flow of traffic[] [nor] posed a trespassory presence on private property." 39 Va. App. at 312.

441 (1973); *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976). "[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Bertine*, 479 U.S. at 374.

The policy considerations justifying inventory searches "include: 1) the protection of the owner's property while it remains in police custody, 2) the protection of police against claims or disputes concerning lost or stolen property, and 3) protection of the public and the police from physical danger." *Williams*, 42 Va. App. at 730. An inventory search is proper if three conditions are met: "1) the vehicle must be lawfully impounded; 2) the impoundment and subsequent search must be conducted pursuant to standard police procedures; and 3) the impoundment and subsequent search must not be a pretextual surrogate for an improper investigatory motive." *Knight v. Commonwealth*, 71 Va. App. 771, 784 (2020) (quoting *Cantrell v. Commonwealth*, 65 Va. App. 53, 60 (2015)). Ashby argues that the inventory search of his truck was pretextual.[12] This argument fails for several reasons.

First, settled precedent establishes that a circuit court's finding regarding whether an inventory search was pretextual is a finding of fact that, like any other finding, is binding on appeal unless plainly wrong or lacking supporting evidence. *See, e.g.*, *Thims v. Commonwealth*, 218 Va. 85, 92 (1977); *Knight*, 71 Va. App. at 781-87 (upholding the circuit court's "factual finding" that an inventory search had been motivated by a desire to investigate). Here, Officer Tindle testified that he believed he had conducted the inventory search in accordance with the

_____

[12] Ashby does not contend that the police procedures were themselves improper or that they did not require Officer Tindle to inventory the truck "as soon as reasonably possible after the decision [was] made to tow the vehicle." Likewise, Ashby does not challenge Officer Tindle's testimony that once he discovered crack cocaine in the truck's cupholder he was no longer merely conducting an inventory search. Thus, Officer Tindle's actions once he discovered the crack cocaine are not at issue.

police department's written policy and denied that he cancelled the tow because he had already achieved his investigative purpose when he found drugs in the truck.[13] In denying Ashby's suppression motion, the circuit court found that Officer Tindle had not acted pretextually, stating: "I certainly don't dismiss the possibility . . . that the matter could be pretextual, but on the motion that's yours, I do not find that." Ashby's arguments to the contrary are insufficient to override this finding of fact.

Case law supports the circuit court's view that Officer Tindle was not obligated to honor Ashby's request to let his wife come retrieve the truck. First, Officer Tindle was not required to accept at face value Ashby's statement that his wife would come to retrieve the truck. Apart from the fact that a delay would have contravened the police procedures requiring an inventory once the decision to tow had been made, Officer Tindle could consider Ashby's erratic behavior that brought about the stop as well as his lethargic behavior during the stop. Second, nothing in the record shows that Ashby informed the officers of his wife's expected arrival time. *See also Fauntleroy*, 62 Va. App. at 250 (officer "certainly was not required to believe" defendant's explanation for his display of an inspection sticker that had been issued for another vehicle).

More fundamentally, Officer Tindle was not obligated to accept the arguably less intrusive measure of Ashby's wife coming to the shop for the truck, in lieu of carrying out a mandated inventory. The Supreme Court of the United States has consistently held that an officer does not act unreasonably by his failure to pursue putatively less intrusive measures. "The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative 'less intrusive' means." *Illinois v. Lafayette*, 462 U.S. 640, 647 (1983). "Even if less intrusive means existed of protecting some particular types of

---

[13] This stands in contrast to *Cantrell*, where we held an inventory search was invalid, based largely on a police officer's acknowledgment at the suppression hearing that one of the purposes of the inventory search was looking for contraband. 65 Va. App. at 64-65.

property, it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding" those objects that they may search and those they must seal as a unit. *Id.* at 648. Likewise, in *Bertine* the Supreme Court acknowledged that although the police could have given the driver the chance to "make alternative arrangements" for the safekeeping of his property, the Fourth Amendment did not obligate them to do so. 479 U.S. at 373-74.

This Court's analysis of an impoundment claim in *Williams* is also pertinent on this point. There, we "decline[d]" to sustain the appellant's argument that the inventory search is invalid if the police do not ask the driver if he can arrange to have the car moved to another location. *Williams*, 42 Va. App. at 733. Instead, an officer not making an inquiry about alternative arrangements for the vehicle is "merely one factor" in determining the reasonableness of an impoundment. *Id.* at 734.[14]

With this in mind, looking at the totality of the circumstances, we cannot say that the circuit court erred in finding the search was not a pretext for criminal investigation here. Therefore, as it was also not an error to find the impoundment to be lawful, the circuit court did not err in denying the motion to suppress.

C. Revocation sentence

"A trial court is vested with significant discretion when deciding whether to revoke a previously suspended sentence." *Booker v. Commonwealth*, 61 Va. App. 323, 337 (2012). We consider the evidence from a revocation hearing in the light most favorable to the

---

[14] As for Ashby's contention that the search was pretextual because Officer Tindle and he had interacted previously, the record does not explain the nature of those interactions, nor does Ashby provide an argument on appeal for why they would result in a pretext for the search. It would be sheer speculation to conclude that the interactions motivated Officer Tindle to improperly conduct an inventory search. Further, the circuit court nevertheless credited Officer Tindle's account after Ashby pointed to their prior contacts during cross-examination. We have no basis for overturning its credibility determination.

Commonwealth, as the prevailing party, including all the reasonable and legitimate inferences that may properly be drawn from that evidence. *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022). "In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Id.* (quoting *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013)).

Here, Ashby acknowledged that he had violated Condition 1 of his probation with his new conviction but contested the violation to preserve his appellate rights should the new conviction be reversed. Ashby asserts, and the Commonwealth agrees, that the sole basis for the revocation was the new conviction. Ashby does not dispute that a new conviction such as his "certainly constitutes good cause to revoke the suspension of a previously imposed sentence." *Booker*, 61 Va. App. at 338. Thus, the parties agree that the validity of Ashby's revocation sentence hinges on the disposition of his appeal of his new conviction. *See Whitehead v. Commonwealth*, 278 Va. 105, 116 (2009) (reversal of new convictions, which were "obviously influential" at revocation hearing, warranted new hearing).

As discussed above, we are affirming the circuit court's denial of Ashby's motion to suppress, and therefore, his new conviction for possession of cocaine with intent to distribute. Accordingly, we likewise affirm the circuit court's revocation order.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*