COURT OF APPEALS OF VIRGINIA

Present:  Judges Baker, Coleman and Senior Judge Cole
Argued at Richmond, Virginia


THOMAS L. TERRY
                                          OPINION BY
v.   Record No. 1087-95-2          JUDGE MARVIN F. COLE
                                       AUGUST 27, 1996
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF HENRICO COUNTY
                     Lee A. Harris, Jr., Judge

          J. Kelly Haley for appellant.

          John K. Byrum, Jr., Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.



     The appellant, Thomas L. Terry, was convicted for possession

of marijuana in violation of Code § 18.2-250.1.  On appeal, he

contends that the trial court erred in denying his motion to

suppress the marijuana.  We disagree and affirm.

     The evidence is not in dispute.  On May 1, 1994, at

approximately 7:32 p.m., Officer Austin J. Whitaker was

dispatched to Three Lakes Park in response to a medical emergency

call.  When he arrived at the park, Whitaker was directed by park

patrons to an area near one of the lakes where he found appellant

in a semiconscious state.  Terry was blue in the face and around

the lips.  He was gasping for air and unable to talk.  Nobody

claimed to be his friend.  Whitaker received no information

concerning any actual or suspected criminal activity in the area.

 There was a tackle box and fishing pole by Terry's side, which

led the officer to believe that Terry had been fishing in the

lake.

Upon arriving at the scene, Whitaker immediately checked Terry's respiration. He determined that Terry was struggling for breath but was breathing. An Emergency Medical Services (EMS) team had been notified and, once they arrived and commenced working on Terry, Whitaker searched Terry's fanny pack to establish an identification, to locate medical information and to determine the cause of Terry's condition. In the pack, Whitaker found a wallet and searched the wallet for a driver's license or some other form of identification. While looking through the wallet, Whitaker came upon some cigarette rolling papers. He then found Terry's driver's license. In the fanny pack, he also discovered a flip-top box of Camel cigarettes and an inhaler.

After finding the cigarette rolling papers, Officer Whitaker, cognizant of the fact that rolling papers are sometimes used to smoke marijuana, concluded that marijuana may have caused appellant's attack. Therefore, he continued looking through the fanny pack, lifted the lid from the box of Camel cigarettes and discovered what appeared to be a marijuana joint among the cigarettes in the box. He relayed this information to the EMS team as a possible cause for Terry's condition.

Terry was subsequently transported to a hospital for medical attention. Whitaker seized the marijuana joint and submitted it to the Consolidated Laboratory, where analysis confirmed that it contained marijuana. Whitaker never spoke with Terry at the

2

scene because Terry was unconscious and in distress the entire time he was in the officer's presence, and was unable to speak. Terry was later arrested for possession of marijuana.

Terry filed a motion to suppress all evidence seized from him during this incident, claiming such seizure violated his Fourth Amendment rights and his statutory rights under Code § 19.2-83. The motion alleged that Whitaker's seizure of the marijuana joint from the cigarette pack was illegal under the Fourth Amendment "because this incident was a medical emergency, and the officer could only lawfully perform a search for identification in a place where one would normally be found, and certainly it would not be reasonable to look for identification in a cigarette pack." A hearing was held on the motion to suppress and Terry made the following argument before the trial court:

> [W]e have a medical emergency here and the officer quite rightly . . . has a reasonable belief that something is wrong and if the person is in danger, he can certainly search for I.D. or some kind of indication of some medical problems. The point here is the scope of that search. And what we have here, he looks in the fanny pack, he finds a wallet, finds identification of who this is and looks through this for any other medical problems, and then he finds a rolling paper. And then he continues the search and this time he's looking into a Marlboro [sic] cigarette pack, where he's not going to find any kind of identification or – he certainly wouldn't find it in there.
>
>     \*    \*    \*    \*    \*    \*    \*
>
> [H]e's blue in the face and that's not

> necessarily attached with smoking marijuana. He's looking in there most probably for some kind of evidence and I think this is beyond the scope of emergency . . . . [T]he only way he can get in that box is if he had probable cause to arrest for misdemeanor in his presence . . . .

The trial judge overruled the motion to suppress, commenting that "as in all searches, it's a matter of reasonableness." He concluded that the actions of the officer were reasonable under the circumstances.

On appeal "the burden is on the [appellant] to show that the trial court's denial of his suppression motion constituted reversible error." DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 544 (1987), cert. denied, 488 U.S. 985 (1988). The trial court's suppression ruling will not be disturbed unless plainly wrong or without evidence to support it. Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994).

Some of the basic principles of a medical information search were stated in Vauss v. United States, 370 F.2d 250, 251-52 (D.C. Cir. 1966) as follows:

> Admissible evidence may be acquired before or after an arrest or without an arrest. If discovered by search, its admissibility turns on whether the search was lawful, i.e., reasonable in the circumstances. That so reasonable a search as occurred here happens to yield evidence of a crime as a by-product even though not so intended is irrelevant. A search of one found in an unconscious condition is both legally permissible and highly necessary. There is a positive need to see if the person is carrying some

4

indication of a medical history, the rapid discovery of which may save his life; there is also a need to identify persons so found in order to notify relatives or friends. That the cause of appellant's being unconscious was not known in no way impaired but rather enhanced the need and inherent power to search appellant.

In Commonwealth v. Waters, 20 Va. App. 285, 290, 456 S.E.2d 527, 530 (1995), we stated the following:

The appropriateness of applying the community caretaker doctrine to a given factual scenario is determined by whether: (1) the officer's initial contact or investigation is reasonable; (2) the intrusion is limited; and (3) the officer is not investigating criminal conduct under the pretext of exercising his community caretaker function. Police officers have an obligation to aid citizens who are ill or in distress, as well as a duty to protect citizens from criminal activity. The two functions are unrelated but not exclusive of one another. Objective reasonableness remains the linchpin of determining the validity of action taken under the community caretaker doctrine.

Terry admits that Whitaker had reasonable grounds to believe a medical emergency existed. Whitaker saw Terry semiconscious, gasping for breath, blue in the face, and unable to speak. Terry concedes that the officer was justified in searching him and his belongings for identification, for medical alert information, or for what may have caused his condition. The crux of Terry's argument is that Whitaker was not entitled to enter the pack of Camel cigarettes because at that time his investigation had changed from aiding a citizen who was ill and in distress to a criminal investigation, one of searching for evidence of the

5

crime of possession of marijuana. Terry's position, however, is contrary to the evidence in the case.

The record shows that Whitaker had no information and no reason to suspect any criminal activity. His conduct at all times was consistent with rendering aid and assistance to Terry because of his medical condition. Whitaker first assessed Terry's condition; then he sought an identification and other pertinent medical information. Whitaker found the rolling papers, which he associated with marijuana use. He continued the search in order to determine the cause of Terry's medical condition and to aid in his treatment. The information concerning the marijuana was relayed to the EMS team. We hold that use of the marijuana evidence, discovered as described, was lawfully obtained and not obtained in violation of the Fourth Amendment.

For the reasons stated, we affirm the judgment of the trial court.

<u>Affirmed.</u>