COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Annunziata and Agee
Argued at Alexandria, Virginia


ANTONIO FREDERICK KING
                                        OPINION BY
v.    Record No. 2815-01-4      JUDGE ROSEMARIE ANNUNZIATA
                                      DECEMBER 3, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   Kathleen H. MacKay, Judge

            Martin W. Lester, Public Defender, for
            appellant.

            Kathleen B. Martin, Assistant Attorney
            General (Jerry W. Kilgore, Attorney General,
            on brief), for appellee.


     On February 21, 2001, Arlington County Sheriff's Deputy

Randy Hill stopped Antonio Frederick King, the appellant, for a

traffic violation.  After determining that King was driving on a

suspended Virginia license, Hill impounded his vehicle and

conducted an inventory search.  The trial court denied King's

motion to suppress evidence found as a result of that search.  It

is from this ruling that King appeals.  For the reasons that

follow, we reverse.

                        Background

     In reviewing the trial court's denial of the motion to

suppress, we view the evidence in the light most favorable to the

Commonwealth, the party prevailing below, and grant to it all

reasonable inferences fairly deducible therefrom.  See Dickerson

v. Commonwealth, 35 Va. App. 172, 177, 543 S.E.2d 623, 626 (2001)

(citing Greene v. Commonwealth, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994)).  So viewed, the evidence establishes that Hill stopped King for speeding and verified that he was driving on a valid Maryland license, but determined his Virginia license had been suspended for failure to pay fines.  Hill issued King a summons for reckless driving and driving on a suspended license.

After King acknowledged he had received notice of his Virginia license's suspension, Hill impounded King's vehicle for "safekeeping," pursuant to the sheriff's department policies. Departmental policy describes the decision to impound a vehicle as a "judgment call" to be made by the deputy who makes the stop. Impoundment is "highly recommended" under the policy, and Hill's common practice was to have the vehicle towed if the driver did not have someone available to drive it from the site, even if the vehicle was legally parked.

King's vehicle was stopped on a two-lane "very heavily congested" street.  An elementary school and other public buildings, including a library, were located nearby.  Hill testified that he "wouldn't put a vehicle there and just leave it there" because the street was congested, and it was "not a rural street [where one would] leave a vehicle."  However, the vehicle was not impeding traffic and there was no evidence it was in a no-parking or otherwise restricted zone.

The inventory search Hill performed before the vehicle was towed yielded a bag of money "halfway hidden" behind a spare tire on the left rear side of the vehicle and another bag of money inside a blue "lunch zip tight bag."  King explained that the money had been in his possession for two days, as an employee of

- 2 -

a vending company.  Ultimately, the money, totaling $2,289.95, was determined to have been stolen from a vending company in Fairfax, Virginia.  Hill also found two crowbars, four screwdrivers, miscellaneous Allen wrenches, keys, and two pairs of gloves in the vehicle.

The trial court denied King's pretrial motion to suppress the evidence, accepting the Commonwealth's argument that Hill had properly impounded and searched the vehicle under the community caretaker function.  The court found Hill's decision to impound the vehicle "eminently sensible," given that the area where the stop occurred was congested.[1]

Analysis

In reviewing the trial court's denial of a motion to suppress on appeal, we will review the evidence in the light most favorable to the Commonwealth, the party prevailing below, together with all reasonable inferences that may be drawn.  See Dickerson, 35 Va. App. at 177, 543 S.E.2d at 626.  The burden to establish that the denial of the motion to suppress constituted reversible error rests with the defendant.  See Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993).  The Fourth and Fourteenth Amendments to the United States Constitution forbid using evidence at trial obtained as a result of an unreasonable search and seizure, and a warrantless search is per se unreasonable unless it falls within one of the

_____

[1] The Commonwealth conceded before the trial court that the search was not conducted incident to arrest since King was not placed under arrest.  See Code 46.2-301.  It further conceded that Hill did not have probable cause to search the vehicle. See Hollis v. Commonwealth, 216 Va. 874, 877, 223 S.E.2d 887, 889 (1976).

few "specifically established and well-delineated exceptions" to the warrant requirement.  McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999).

In the context of the Fourth Amendment, "'[u]ltimate questions of reasonable suspicion and probable cause . . . involve questions of both law and fact and are reviewed de novo on appeal.'"  McGee v. Commonwealth, 25 Va. App. 193, 197–98, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)).  However, the appellate court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and [it] give[s] due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  Id. at 198, 487 S.E.2d at 261 (citing Ornelas, 517 U.S. at 699).  The trial court's legal conclusion concerning when, or whether, a seizure or search occurred is reviewed de novo.  See McNair, 31 Va. App. at 82, 521 S.E.2d at 306; see also McGee, 25 Va. App. at 198, 487 S.E.2d at 261; United States v. Mendenhall, 446 U.S. 544, 552 (1980).

In the case at bar, the Commonwealth justifies the search of King's car under the "community caretaking doctrine."  See generally South Dakota v. Opperman, 428 U.S. 364 (1976); Cady v. Dombrowski, 413 U.S. 433 (1973).  In Opperman, the car in question had been illegally parked in a restricted zone for at least seven hours, and had been issued multiple citations for parking violations.  See Opperman, 428 U.S. at 366.  The Supreme Court upheld the subsequent inventory search as valid, on the ground that the owner of the vehicle was not present to safeguard

- 4 -

his belongings, which were inside the vehicle and clearly visible to the police. See id. at 368. The Court stated "[i]n the interests of public safety and as a part of what the Court has called 'community caretaking functions,' automobiles are frequently taken into police custody." Id. The Court gave two examples of circumstances warranting the application of the doctrine: vehicles disabled or damaged in an accident, and vehicles in violation of parking ordinances. "To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities." Id. Additionally, the Court noted that vehicles "violat[ing] parking ordinance[s] . . . jeopardize both public safety and the efficient movement of vehicular traffic . . . ." Id.

In Cady, a police officer, who was required to carry his service revolver at all times, had a one-car accident near a small town. See Cady, 413 U.S. at 433. His car crashed into a bridge abutment just off the highway and was disabled. The officer was arrested for drunk driving and removed from the scene. See id. The Court found the vehicle constituted a "nuisance on the highway" and, therefore, was properly impounded before a valid inventory search was conducted. See id. at 442-43. Additionally, the Cady Court noted the responding police officer's concern that the driver's service revolver might be in the car and susceptible to theft by vandals if the car had been left on the highway. See id.

The Virginia Supreme Court, in Reese v. Commonwealth, 220

Va. 1035, 265 S.E.2d 746 (1980), grounded the warrantless inventory exception to the Fourth Amendment in the same policy considerations identified in Opperman and Cady: the need to 1) protect the owner's property while it remains in police custody, 2) protect the police against claims or disputes concerning lost or stolen property, and 3) protect the public and the police from physical danger. See Reese, 220 Va. at 1039, 265 S.E.2d at 749. In addition to these policy considerations, this Court has held that, to justify a warrantless inventory search by the police, the Commonwealth must show 1) the vehicle was lawfully impounded, 2) pursuant to standard police procedures and 3) the impoundment and subsequent search are not a pretext concealing an investigatory motive. See Servis v. Commonwealth, 6 Va. App. 506, 521, 371 S.E.2d 156, 163 (1988).

The validity of the impoundment is a question separate from the validity of the subsequent inventory search and must be determined first. See generally, Opperman; Cabbler v. Commonwealth, 212 Va. 520, 184 S.E.2d 781 (1971). Relying on this Court's holding in Servis, King contends his car was not lawfully impounded, thus invalidating the subsequent search. In Servis, the police responded to an attempted break-in report at a local motel. The officers learned from the front desk clerk that a car in the parking lot belonged to the defendant. See Servis, 6 Va. App. at 511, 371 S.E.2d at 157. After finding drug paraphernalia in Servis' room, the police arrested him and brought him before a magistrate. See id. When the motel clerk declined to take responsibility for the defendant's car, as requested by police, the officer made arrangements to have the

- 6 -

car towed.  In anticipation of the impoundment, he conducted an inventory search of the car.  See id. at 512-13, 371 S.E.2d at 158.

In affirming the trial court's denial of Servis' motion to suppress, we held that "[a] routine inventory search of a lawfully impounded vehicle conducted pursuant to standard police procedure is reasonable under the Fourth Amendment unless it is 'a pretext concealing an investigatory motive.'"  Id. at 521, 371 S.E.2d at 163 (quoting Opperman, 428 U.S. at 368-69).  We upheld the impoundment and subsequent inventory search on the ground the police could not be certain if the defendant would be released in time to remove the car from the motel parking lot.[2]  See id. Furthermore, the motel clerk had asked that the car be removed from the motel's private property and the defendant was unable to comply with the request.

Here, Hill's subjective view that he "wouldn't put a vehicle there and just leave it there" does not substitute for objective facts establishing that the public's safety was at risk or that a need to safeguard the vehicle existed.  Objective reasonableness remains the linchpin of determining the validity of action taken under the community caretaker doctrine.  See Terry v. Commonwealth, 23 Va. App. 87, 90, 474 S.E.2d 172, 173 (1996). Moreover, the reasonableness of a search depends on the facts and circumstances of each case.  See id.  In the case at bar, King's vehicle was properly parked.  Although the area where the stop occurred was described as a "very heavily congested" two-lane

_____

[2] After 11:00 a.m., the defendant's car would have been parked illegally.

street near an elementary school, a library, and other public buildings, the car neither obstructed the free flow of traffic, posed a trespassory presence on private property, nor violated any parking ordinances. In addition, King, the owner of the vehicle, was not taken into custody or removed from the scene and, although he could not personally drive the vehicle, the evidence failed to show he was unable to arrange for its removal to another location, or to safeguard his property. See, e.g., Cabbler, 212 Va. at 521, 184 S.E.2d at 782. Indeed, the record shows that the police made no inquiry regarding King's ability to make arrangements to have the car driven from Virginia to his home in Maryland or otherwise moved. Moreover, there is no evidence that, prior to impoundment, King had property in the car, subject to theft or vandalism.

The Commonwealth premises its arguments on Hill's "common practice" to have vehicles towed if the driver did not have someone available to drive it from the scene and that Hill had the discretion to conduct such inventory searches under departmental policy. However, the Fourth Amendment compels an analysis that is grounded in the facts of the specific case under investigation which, when properly conducted, discloses to the officer a legally-recognized basis for conducting a warrantless inventory search. In conducting the requisite analysis, the individual citizen's right to be free from unwarranted searches of one's person or property is to be balanced against the public interest in the safety and welfare of all those involved. Thus, a law enforcement department's general grant of authority to its officers to exercise discretion in impounding vehicles, of

necessity, incorporates Fourth Amendment principles and the limitations they impose on the exercise of discretion in conducting such searches.

We further note that the Commonwealth's reliance on Cabbler and Butler v. Commonwealth, 31 Va. App. 613, 525 S.E.2d 58 (2000), is misplaced; in those cases, the defendant was taken into custody and removed from the scene. In Cabbler, the defendant's car was parked illegally in front of a hospital, in a no-parking zone, partially blocking the ambulance entrance to the emergency room. The defendant was arrested and told his car would be removed for safekeeping until his release from custody. See Cabbler, 212 Va. at 521, 184 S.E.2d at 782. The Cabbler Court determined the impoundment and search were lawful because the defendant was arrested and no immediate means were available to safeguard the vehicle. See id. at 522, 184 S.E.2d at 782.

In Butler, the police followed the defendant into the parking garage of an apartment complex and arrested him for speeding and driving with a suspended license. The defendant did not live in the complex, which required a parking permit for all parked cars, and he did not have permission as a guest to park in the garage. The police impounded the car after a police officer-resident said the vehicle had to be moved. See Butler, 31 Va. App. at 617-18, 525 S.E.2d at 59-60. The Butler Court upheld the impoundment and search on grounds similar to those stated in Cabbler and recognized the right of police to "impound a vehicle in the possession of a person arrested away from his or her residence, provided there are no immediate means to protect the vehicle . . . ." Id. at 618, 525 S.E.2d at 60 (citing Cabbler,

- 9 -

212 Va. at 522-23, 184 S.E.2d at 782-83).

Finally, we disagree with the Commonwealth's position that the impoundment and search were justified because, hypothetically, someone could have tampered with or stolen the car had it been left on the street.  To permit impoundment and inventory predicated solely on possible theft or vandalism would altogether vitiate Fourth Amendment protections.  Taken to its logical extreme, such a doctrine would authorize an officer to impound any car, in any location, including those legally parked, at any time, because cars are always, hypothetically, subject to theft and vandalism.  We decline to adopt such a posture.

Accordingly, we reverse King's convictions and remand for a new trial if the Commonwealth is so disposed.

<u>Reversed and remanded.</u>