COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Huff and Chaney
Argued at Norfolk, Virginia


ELIJAH SAMUEL DAVIS NOTTINGHAM

                                   MEMORANDUM OPINION* BY
v.      Record No. 1028-22-1          JUDGE RANDOLPH A. BEALES
                                    SEPTEMBER 19, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge[1]

Roger A. Whitus (Slipow & Robusto, P.C., on brief), for appellant.

Angelique Rogers, Assistant Attorney General (Jason S. Miyares,
Attorney General; Robin M. Nagel, Assistant Attorney General, on
brief), for appellee.


Following the Circuit Court of the City of Virginia Beach's denial of his motion to suppress

evidence obtained during a warrantless search of his vehicle, Elijah Nottingham entered a

conditional guilty plea to carrying a concealed weapon. *See* Code §§ 18.2-308, 19.2-254.  On

appeal, Nottingham contends that the circuit court erred in denying his motion to suppress because

the evidence "was obtained in violation of appellant's Fourth Amendment right against

unreasonable searches and seizures."

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge A. Bonwill Shockley ruled on Nottingham's motion to suppress the evidence,
which is the subject of this appeal.  Judge James C. Lewis accepted Nottingham's conditional
guilty plea and presided over his sentencing.

## I. BACKGROUND

After dark on the evening of June 18, 2021, Officer Astin of the Virginia Beach Police Department ("VBPD") initiated a traffic stop of Nottingham on Ferrell Parkway (the "highway") in Virginia Beach. Nottingham parked his black sedan on the shoulder of the highway and exited the vehicle at Officer Astin's command. After Nottingham took a preliminary breath test, Officer Astin placed Nottingham under arrest for driving under the influence of alcohol.

Officer Astin searched Nottingham incident to that arrest and found a single pill in Nottingham's front right pocket. Nottingham informed Officer Astin that he had a prescription for that pill, which Nottingham identified as ten milligrams of Percocet. Nottingham told Officer Astin, "I'm a sickle cell patient. I have SC disease." He explained that he kept the Percocet pill on his person in case he had a sickle-cell-induced pain crisis. Officer Astin then told Nottingham, "I won't charge you with it [possession of a controlled substance] if I find the prescription." Nottingham eventually agreed to let Officer Astin retrieve proof of the Percocet prescription from a bag located on the front passenger seat of his vehicle, but Nottingham told Officer Astin that he did not consent to a search of his vehicle.

Officer Astin informed Officer Dunbar (the assisting VBPD officer at the scene), "I'm gonna go see if he [Nottingham] has a prescription for it [Percocet]. . . . We have to search for the tow anyway, but I feel like we have it for the narcotics." Officer Astin asked Officer Dunbar to watch Nottingham while he searched the vehicle and suggested that Officer Dunbar could help do "the tow sheet" once Officer Astin finished his search of the vehicle. Officer Astin's body camera video footage shows that Officer Astin then began searching a black bag located on the front passenger seat of Nottingham's vehicle. As Officer Astin searched that bag, he found a set of four packaged and unopened hypodermic needles and a Rolex watch that he described as a "very expensive watch." Next, Officer Astin found the Percocet prescription bottle. The body

camera video footage shows that Officer Astin was able to confirm that the label recorded a prescription for Percocet. Officer Astin then confirmed that the prescription bottle contained seven Percocet pills. He also commented, "Yup, he does. For Percocet, yup, all right, and that's what it is."[2]

Despite finding the Percocet prescription, Officer Astin continued searching throughout the vehicle. The body camera video footage shows that he then found three cell phones inside the black bag. After he finished searching the black bag on the front passenger seat, Officer Astin searched the glove compartment and then searched the space between the passenger seat and the center console. However, he made no audible comments to suggest he found anything of note. Next, Officer Astin moved the front passenger seat forward to search underneath the seat and noticed a revolver on the floor that had been underneath the seat. He reported the firearm to the dispatch officer and asked her to run the serial number on the firearm—which did not flag any alerts.[3] He then noticed an open bottle of alcohol next to where the firearm had been and excitedly exclaimed, "Oh! We got ourselves a liquor bottle! Hey! Open container! Neat!" Officer Astin continued his search and commented, "What other goodies are we gonna find in this car?"

Officer Astin rummaged through a large bag in the back seat but stopped when he concluded, "Oh, it's his gym bag." In the center console, he found keys, cigarettes, and a package of methylprednisolone. He took notice of the methylprednisolone but put it down when

---

[2] However, at the hearing on the motion to suppress, Officer Astin testified that, while he "was able to confirm there was a pill bottle that says 'Percocet' on there," he "d[id]n't remember if [he] could read the name on it or not" because the label "was super faded."

[3] Officer Astin also asked Officer Dunbar to run a criminal background check on Nottingham to see whether he had any prior felonies—and, thus, could be charged with being a felon in possession of a firearm. The record does not reflect that Nottingham was ever indicted for being a felon in possession of a firearm.

he determined that "he's [Nottingham] got a prescription for it, so we're good." Officer Astin then moved the front driver's seat forward and searched behind that seat where he found a box labeled Kwikset Smartcode—a door lock. He shook the box, but he did not open it because he concluded that it "sound[ed] like" there was a door lock in the box. Officer Astin also briefly searched the rather full trunk.

Only "after [Officer Astin] conducted a full search of the vehicle" did he get an "inventory sheet, and began inventorying the items" he had found. The body camera video footage shows that he noted the Rolex watch, "a LG phone," "seven credit cards, TWIC ID, four needles, gym bag, and bottle of tequila." However, he did not note on the inventory sheet the firearm, the two other cell phones, the keys, the Smartcode lock, the methylprednisolone, or even the Percocet. Officer Astin then removed the firearm from the vehicle and took it into evidence, but he left everything else in the vehicle, including the Rolex watch.[4]

Nottingham was charged with driving under the influence of alcohol and with carrying a concealed weapon. Nottingham then filed a motion to suppress the evidence found during the warrantless search of his vehicle, arguing that Officer Astin's search constituted an unreasonable warrantless search and, therefore, violated his rights under the Fourth Amendment.

At the hearing on the motion to suppress, Officer Astin testified that he "made a decision to tow the vehicle and do a search of the vehicle based on the Percocet pill that was found on [Nottingham's] person." He explained that "after discovery of the Percocet pill in his pocket, I had probable cause to believe there would be more Percocet in the car."

---

[4] After Officer Astin finished searching the vehicle and filling out the inventory sheet, Officer Dunbar pointed out a gun holster on the front passenger seat, which Dunbar had mentioned in passing earlier. When Officer Dunbar showed Officer Astin the holster, Officer Astin responded, "Oh yeah, that is a slip-in holster, neat!"

Officer Astin also explained that he had reason to tow Nottingham's vehicle because he believed that leaving Nottingham's vehicle on the shoulder of the highway would constitute a traffic hazard. VBPD's written policy regarding the impoundment of vehicles in Virginia Beach, which was entered into evidence, states that "Police Officers and Community Service Officers (CSO) bear the responsibility of removing unattended, abandoned, wrecked or junked vehicles from the public roadways . . . in furtherance of promoting safe travel." At the hearing, Officer Astin explained that the car was "blocking the shoulder lane," that the shoulder is "not designated for parking," and that "if a car were to come out of its lane by someone being inattentive or texting, they would smash right into the car at 55 miles an hour" (which was the speed limit on the highway).

VBPD's written inventory policy also provides standard procedures for inventorying an impounded vehicle. Specifically, it states that police officers

> shall compile an inventory of the contents of the vehicle without delay. The inventory should include items found in the glove box, trunk, and all storage areas. All containers found in the vehicle as part of this inventory . . . should be opened and the contents listed in the appropriate block of the Notice of Vehicle Tow, Impoundment, Seizure, Abandoned form (PF 50-6).

However, Officer Astin acknowledged at the suppression hearing that he failed to list several items that he found during his search on the inventory sheet, including two out of the three cell phones, the Smartcode lock, and the Percocet pills.

VBPD's written inventory policy also states:

> If during the inventory search an item of high value or one that poses a potential safety hazard or risk to public safety is located the officer will take custody of such items and submit them to Property and Evidence on PD-478, (Property and Evidence Voucher). Such items include but are not limited to: firearms, jewelry, and amounts of currency greater than fifty dollars ($50).

Despite this written VBPD policy, Officer Astin testified that he did not take custody of the Rolex watch, the credit cards, or any of the phones found in the car. At the hearing, Officer Astin explained that he did not consider the Rolex watch to be a high-value item because "the appraisal sheet had it in the value of a few hundred dollars." However, when asked what his number for a high-value item was, he responded, "I don't know."

Following argument by both parties, the circuit court judge explained, "The officers had . . . among other things, community caretaker to pull over and see if the car is doing okay. And then from there . . . they shouldn't leave a car on the shoulder in a space where other cars might need to pull off." Thus, the circuit court judge agreed with the Commonwealth that Officer Astin reasonably believed the car constituted a traffic hazard and, therefore, could be lawfully impounded. Furthermore, the circuit court judge concluded, "And once a car is towed, they always do inventory searches, and as far as I can figure, I haven't seen anything that says that inventory searches are illegal." Consequently, the circuit court denied Nottingham's motion to suppress the evidence. Nottingham subsequently entered a conditional guilty plea to the charge of carrying a concealed weapon, and he conditioned the guilty plea on his right to appeal the circuit court's denial of his motion to suppress the evidence found during the warrantless search of his vehicle.[5]

## II. ANALYSIS

On appeal, Nottingham contends that "[t]he trial court erred by denying appellant's motion to suppress because the evidence in this case was obtained in violation of appellant's Fourth Amendment right against unreasonable searches and seizures." Specifically, he argues that the circuit court erred in holding that Officer Astin conducted a valid inventory search. Furthermore, he

---

[5] The circuit court also convicted Nottingham, upon his conditional plea of guilty, of misdemeanor driving under the influence of alcohol, in violation of Code § 18.2-266. Nottingham did not appeal that conviction.

also argues that Officer Astin's search was not supported by probable cause. On appeal, "[t]his Court gives deference to the trial court's findings of historical fact unless they are plainly wrong or without evidence to support them." *Williams v. Commonwealth*, 42 Va. App. 723, 730 (2004) (citing *King v. Commonwealth*, 39 Va. App. 306, 309 (2002)). "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015) (quoting *Hughes v. Commonwealth*, 31 Va. App. 447, 454 (2000) (*en banc*)).

### A.  The Inventory Search

The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures, including unreasonable searches and seizures of their automobiles. U.S. Const. amend. IV; *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976) (identifying automobiles as "within the reach of the Fourth Amendment"). The Supreme Court has stated that warrantless searches and seizures "are *per se* unreasonable under the Fourth Amendment —subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (quoting *Thompson v. Louisiana*, 469 U.S. 17, 20 (1984) (per curiam)); *see also Megel v. Commonwealth*, 262 Va. 531, 534 (2001).

"One such exception to the general rule requiring a search warrant is when an inventory search of an impounded vehicle is conducted in accord with the policy considerations recognized by the United States Supreme Court in *South Dakota v. Opperman*, 428 U.S. 364 (1976), and *Cady v. Dombrowski*, 413 U.S. 433 (1973)." *Cantrell*, 65 Va. App. at 59. The policy considerations that undergird this inventory search exception (also known as the community caretaker exception), are "1) the protection of the owner's property while it remains in police custody, 2) the protection of police against claims or disputes concerning lost or stolen property, and 3) protection of the public

- 7 -

and the police from physical danger." *Williams*, 42 Va. App. at 730. Consequently, police officers may conduct a warrantless inventory search of a vehicle *only* when certain requirements are met. *Cantrell*, 65 Va. App. at 60. These requirements are: "1) the vehicle must be lawfully impounded; 2) the impoundment and subsequent search must be conducted pursuant to standard police procedures; and 3) the impoundment and subsequent search must not be a pretextual surrogate for an improper investigatory motive." *Id.* Since "[t]he validity of the impoundment is a question separate from the validity of the subsequent inventory search," it "must be determined first." *King*, 39 Va. App. at 311.

### 1. *The Validity of the Impoundment*

The relevant question in determining whether Officer Astin lawfully impounded Nottingham's vehicle is whether the officer's decision to impound Nottingham's automobile was objectively reasonable under the circumstances. "Objective reasonableness remains the linchpin of determining the validity of action taken under the community caretaker doctrine." *Williams*, 42 Va. App. at 731; *see also King*, 39 Va. App. at 312.

In this case, Officer Astin had arrested Nottingham for driving under the influence of alcohol after stopping Nottingham on the side of the highway in Virginia Beach. *See Butler v. Commonwealth*, 31 Va. App. 614, 618 (2000) ("The Supreme Court of Virginia has previously recognized the right of the police to impound a vehicle in the possession of a person arrested away from his or her residence, provided there are no immediate means to protect the vehicle and the police act pursuant to reasonable policies and procedures." (citing *Cabbler v. Commonwealth*, 212 Va. 520, 522-23 (1971))). Nottingham was unable to drive his car away from the scene because he was under arrest. Furthermore, the record shows that Nottingham was the only occupant of the vehicle and that he never asked that he be allowed to make alternative arrangements for the removal of his vehicle from the side of the highway. *See Williams*, 42 Va. App. at 733

- 8 -

("[T]o be reasonable under the Fourth Amendment, the arresting officer should be required . . . to comply with any reasonable alternative disposition *requested*." (alterations in original) (quoting 3 Wayne R. LaFave, *Search and Seizure* § 7.3(c), at 527 (3d ed. 1996 & Supp. 2004))).

In addition, VBPD policy required VBPD officers to impound "[v]ehicles that constitute traffic hazards." The circuit court concluded that Nottingham's car constituted a traffic hazard, and we cannot say on appeal that this finding of fact is plainly wrong. *See Williams*, 42 Va. App. at 730. The record shows that Nottingham's black car was stopped in the dark, on the shoulder of a four-lane highway, where the speed limit was 55 miles per hour. Given these facts, it was reasonable to conclude that Nottingham's vehicle constituted a traffic hazard. Therefore, the impoundment of the vehicle was lawful under the community caretaker doctrine.

2. *The Validity of the Search*

Under the inventory search exception, however, it is not enough that a person's vehicle be lawfully impounded. The impoundment *and subsequent search* of the vehicle must also be "conducted pursuant to standard police procedures" and "must not be a pretextual surrogate for an improper investigatory motive." *Id.* at 731; *see also Cantrell*, 65 Va. App. at 60; *Knight v. Commonwealth*, 71 Va. App. 771, 784 (2020). Binding precedent of this Court makes clear that an inventory search that is conducted pursuant to standardized procedures is valid only "so long as the purpose of the inventory is . . . not to gather incriminating evidence against the owner." *Cantrell*, 65 Va. App. at 61 (omission in original) (quoting *United States v. Brown*, 787 F.2d 929, 932 (4th Cir. 1986)).

From the record before this Court, it is clear that Officer Astin's chief motivation for the search was to gather incriminating evidence against Nottingham, who was driving the vehicle. Officer Astin himself admitted at the suppression hearing that he "made a decision to tow the vehicle and do a *search of the vehicle based on the Percocet pill* that was found on [Nottingham's]

person." (Emphasis added). He further expressly acknowledged that one of the reasons he conducted the search of Nottingham's vehicle was to look for drugs. *See Cantrell*, 65 Va. App. at 65 (holding that "admission that searching for contraband was *one of the purposes* for performing the inventory search clearly establishes that the inventory search of [appellant]'s vehicle was conducted with an improper investigatory motive" (emphasis added)). Body camera video footage of Officer Astin's search buttresses this testimony and also reveals that Officer Astin clearly wanted to determine what additional charges he could add to Nottingham's DUI charge.

After arresting Nottingham for DUI and finding a single ten milligram Percocet pill in Nottingham's pocket, Officer Astin told Nottingham, "I won't charge you with it [possession of a controlled substance] if I find the prescription." However, after finding the Percocet prescription in Nottingham's vehicle exactly where Nottingham said it would be, Officer Astin still continued to search the vehicle in an *investigatory* manner despite Nottingham's denial of consent for the search. Rather than first inventorying the visible contents of the car as he discovered them, Officer Astin first searched crevices in the vehicle where Nottingham could have hidden contraband, such as the space between the center console and the front passenger seat, the glove compartment, and underneath the passenger seat. Furthermore, Officer Astin made no attempt to prepare a list of the contents of the car while he searched the vehicle, instead rummaging through the entire car to see, as he put it on the body camera video footage, "[w]hat other goodies" he could find. *See Knight*, 71 Va. App. at 785.

Officer Astin's body camera video footage shows that, during his search, he rather quickly dismissed items that he determined were not contraband. In contrast, he became noticeably excited when he found potential contraband. For example, Officer Astin took notice of a package of methylprednisolone in the center console but quickly dismissed it, commenting "he's got a prescription for it, so we're good." He did not even list these strong drugs on the inventory

sheet or remove them from the vehicle when it was impounded. Then, after noticing an open and partially consumed bottle of alcohol, Officer Astin excitedly exclaimed, "Oh! We got ourselves a liquor bottle! Hey! Open container! Neat!" As Officer Astin went back into the car to continue searching, he said, "What other goodies are we gonna find in this car?" Officer Astin's statements and conduct clearly demonstrate that the officer had an improper investigatory motive when going through Nottingham's vehicle—namely, to gather incriminating evidence against Nottingham. *See Cantrell*, 65 Va. App. at 60-61.

In addition, Officer Astin's search of Nottingham's vehicle did not comport with standard police procedures of the VBPD. *See id.* at 60 ("[T]he impoundment and subsequent search must be conducted pursuant to standard police procedures."). VBPD policy required that officers "compile an inventory of the contents of the vehicle without delay." Furthermore, the policy required not only that officers list items found in the open spaces of the car but also list "items found in the glove box, trunk, and all storage areas." Officer Astin did not list virtually any of the many items located in the trunk of Nottingham's car, nor did he list items found in the center console. In fact, he did not list most of the items he found during his search. According to the record before this Court, Officer Astin failed to list on the inventory form most of the items he found during his search, including several significant items such as the firearm, two out of the three cell phones, the methylprednisolone, and the Percocet.

Furthermore, despite the fact that VBPD policy requires officers to take custody of high value items, including "firearms, jewelry, and amounts of currency greater than fifty dollars ($50)," Officer Astin left the Rolex watch in the vehicle. When asked about this at the suppression hearing, he explained that he "didn't see any need to" take the Rolex watch into custody because he did not "consider it to be" a high-value item. However, Officer Astin clearly recognized the Rolex watch as a high-value item when he was searching the car because he commented that the Rolex was a "very

- 11 -

expensive watch." He testified at the suppression hearing that the watch was "in the value of a few hundred dollars." Officer Astin's conduct here cannot be ignored despite his suggestion at the suppression hearing that VBPD police officers often leave such high-value items in the car. Even if true, disregard for standard police procedures by a number of police officers simply does not transform their actions into actions that are in compliance with VBPD standard police procedures. Regardless of any such actions by his peers, Officer Astin's failure to comply with VBPD procedure is exactly that—a failure to comply with VBPD standard procedures. VBPD policy requires officers to take into custody high-value items found during an inventory search, and Officer Astin failed to do so here.

In short, given the totality of the circumstances in this particular case, we cannot find that Officer Astin's search of Nottingham's car falls under the inventory search exception. Regardless of whether the vehicle was lawfully impounded, the search was not "conducted pursuant to standard police procedures" and was a "pretextual surrogate for an improper investigatory motive." *Cantrell*, 65 Va. App. at 60. Indeed, Officer Astin's actions and outspoken comments as he searched Nottingham's vehicle show that Officer Astin was not as much motivated by his role as community caretaker (which undergirds the inventory search exception) as by trying to find out what possible incriminating evidence could be in the vehicle. *See Williams*, 42 Va. App. at 730. Officer Astin left all of Nottingham's belongings, including a "very expensive [Rolex] watch," in the vehicle rather than taking it into custody as VBPD policy required for an inventory search. Astin also failed to inventory most of the items in the vehicle. Officer Astin's conduct and very clear statements demonstrate that he was primarily motivated instead by a desire to search for contraband to determine what charges he could add to the DUI charge for which Nottingham had already been arrested. Therefore, under the totality of the

circumstances in this particular case, we hold that Officer Astin's search of the vehicle did not constitute a valid inventory search.

### B. Probable Cause and Inevitable Discovery

The Commonwealth argues that this Court should, nevertheless, affirm the circuit court's denial of Nottingham's motion to suppress because Officer Astin had probable cause to search Nottingham's vehicle pursuant to the automobile exception after finding the single Percocet pill in Nottingham's pocket. *See Carroll v. United States*, 267 U.S. 132 (1925). However, the circuit court never ruled on (or even considered) whether Officer Astin had probable cause, under the particular circumstances of this case, to search the vehicle pursuant to the automobile exception. Given that Nottingham entered a conditional guilty plea pursuant to Code § 19.2-254, Supreme Court of Virginia precedent precludes us from now deciding on appeal whether the automobile exception applies to the facts of this case.

In *Hasan v. Commonwealth*, 276 Va. 674, 677 (2008), several armed police officers surrounded Hasan during a traffic stop and, without informing him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), questioned him about the presence of any weapons in the vehicle. Hasan filed a motion to suppress his answers to those questions, which the circuit court denied. On appeal to the Supreme Court of Virginia, "Hasan argue[d] that his statement to police about the presence of a handgun in the vehicle should have been suppressed" because he was in custody when he was questioned but had not received the requisite *Miranda* warnings. 276 Va. at 679. The Supreme Court agreed with Hasan and held that "a reasonable person in Hasan's position 'would have understood that his freedom was being restricted to a degree associated with a formal arrest'"—and that therefore, for the purposes of *Miranda*, Hasan was in police custody at the time he made the incriminating statements. *Id.* at 681 (quoting *Dixon v. Commonwealth*, 270 Va. 34, 40 (2005)).

- 13 -

The Commonwealth, however, in *Hasan* argued in the alternative "that a reversal of Hasan's conviction would be improper because evidence of the weapon in the car would have been admissible under the doctrine of 'inevitable discovery,'" or because the officer's "question was justified by the 'public safety' exception to the requirements of *Miranda*." *Id.* The Supreme Court, however, expressly refused to consider those exceptions because Hasan had entered a conditional guilty plea pursuant to Code § 19.2-254. *Id.* The Supreme Court explained that the Commonwealth's alternative arguments,

> which are in the nature of a harmless error analysis, are inapplicable to this case. Even if the Commonwealth is correct about the inevitable discovery of the weapon or the application of the public safety exception, Hasan entered a conditional guilty plea pursuant to Code § 19.2-254, which provides in part that "[i]f the defendant prevails on appeal, he shall be allowed to withdraw his plea."

*Id.* Consequently, without considering any alternative grounds to affirm the circuit court, the Supreme Court held that "the trial court's denial of Hasan's motion to suppress was erroneous" and reversed. *Id.*

It is important to note that the Supreme Court, in *Hasan*, not only refused to consider whether the inevitable discovery doctrine applied in that case but also refused to consider whether the public safety exception to *Miranda* applied. The Fifth Amendment public safety exception is a narrow exception to the *Miranda* rule that applies when the "need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Anderson v. Commonwealth*, 279 Va. 85, 91 (2010) (quoting *New York v. Quarles*, 467 U.S. 649, 657 (1984)). Thus, if the public safety exception to *Miranda* would have applied, Hasan's statement might well not have needed to be suppressed. *See id.* at 93. Nevertheless, even though the public safety exception to the *Miranda* requirements under the Fifth Amendment may well have affected whether Hasan prevailed on appeal regarding the suppression of his statements under the Fifth Amendment, the Supreme Court

- 14 -

still refused to consider the Commonwealth's argument about the public safety exception on appeal—and reversed and remanded for a new trial so as to allow Hasan to withdraw his conditional guilty plea.

In this case, Nottingham, like Hasan, entered into a conditional guilty plea pursuant to Code § 19.2-254. The circuit court, in this case, based its ruling on the motion to suppress only on the grounds that Officer Astin's search of Nottingham's vehicle was a valid inventory search. However, as we have explained *supra*, in Part II A, Nottingham has prevailed on appeal based upon that sole ground that the circuit court considered. To now consider whether Officer Astin's search was supported by probable cause would be, as the Supreme Court has stated in *Hasan*, "in the nature of a harmless error analysis," and, consequently, "inapplicable to this case." *See* 276 Va. at 681. It then follows that Nottingham, like Hasan, is entitled by statute to withdraw his conditional guilty plea.[6]

Furthermore, we note that we cannot apply the right-result-for-a-different-reason doctrine now on appeal because significant facts necessary to an analysis of probable cause remain in dispute on appeal, given that the circuit court never actually ruled on probable cause. We cannot apply the right-result-for-a-different-reason doctrine unless "the record demonstrates that all evidence necessary to the alternative ground for affirmance was before the circuit court and, if that evidence was conflicting, how it resolved the dispute, or weighed or credited contradicting testimony." *Banks v. Commonwealth*, 280 Va. 612, 618 (2010). On appeal, the parties dispute whether Officer Astin actually confirmed that the Percocet was really prescribed to Nottingham. Nottingham contends that Officer Astin had confirmed that the Percocet was actually prescribed to Nottingham.

_____

[6] For this same reason, we are also unable to consider whether the inevitable discovery doctrine applies to this case. *See Hasan*, 276 Va. at 681; *see also Baker v. Commonwealth*, 57 Va. App. 181, 195-96 (2010) (applying the Supreme Court's reasoning in *Hasan* to a case involving a motion to suppress evidence obtained from an unlawful search and thereby refusing to apply the inevitable discovery doctrine).

In contrast, the Commonwealth insists that, although Officer Astin found a bottle showing a prescription for Percocet, Officer Astin was unable to read the faded prescription label so as to confirm "that Nottingham was validly prescribed Percocet." The record on appeal, however, suggests that Officer Astin was satisfied that Nottingham was validly prescribed the Percocet—given that at the scene he stated, "Yup, he does. For Percocet, yup, all right, and that's what it is," and given that Officer Astin agreed at the suppression hearing that he "essentially believed" that Nottingham was legally in possession of the Percocet. However, this fact is clearly in dispute between the parties on appeal, and given that the circuit court never considered whether Officer Astin had probable cause to search the vehicle, the circuit court did not resolve that dispute. In order for this Court to apply the right-result-for-a-different-reason doctrine, the record must contain all the facts necessary for us to affirm the circuit court on the alternative ground presented—and the undisputed facts in the record simply do not allow us to do so here. *See id.*

Consequently, binding precedent from the Supreme Court of Virginia forecloses us from considering the Commonwealth's probable cause argument now on appeal.

III. CONCLUSION

For all of the foregoing reasons, under the totality of the circumstances of this particular case, we hold that the circuit court erred in ruling that Officer Astin conducted a valid inventory search of Nottingham's vehicle and in thereby denying Nottingham's motion to suppress. We, therefore, reverse Nottingham's conviction for misdemeanor carrying a concealed weapon based upon his conditional guilty plea and remand to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*