# COURT OF APPEALS OF VIRGINIA

### Record No. 0077-25-4

DAQUAN HINTON

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Beales, Raphael and Bernhard

Argued at Arlington, Virginia

Opinion Issued May 12, 2026

## FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel T. Lopez, Judge[1]

Bradley R. Haywood (Haywood Law LLC, on brief), for appellant.

Ryan Beehler, Assistant Attorney General (Jason S. Miyares,[2] Attorney General, on brief), for appellee.

## PUBLISHED OPINION BY
## <u>JUDGE RANDOLPH A. BEALES</u>

Upon his conditional guilty plea, the Circuit Court of Arlington County convicted Daquan Hinton of carrying a concealed weapon in violation of Code § 18.2-308. The circuit court sentenced him to ten days of incarceration with all ten days suspended. On appeal, Hinton argues that the circuit court erred by denying his motion to suppress because it erred in finding that his "vehicle was lawfully impounded" and that "the impound and inventory of [his] vehicle were conducted according to police procedure." He further argues that the circuit court erred by "concluding that the impound and inventory were not a pretextual surrogate for an improper investigatory motive."

---

[1] Judge Daniel S. Fiore, II presided over the suppression hearing.

[2] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[3]

On May 19, 2023, Sergeant Erik Einbinder of the Arlington County Police Department was monitoring traffic on Interstate 395. Hinton was driving alone after having dropped off his girlfriend and her child at a nearby airport. At a hearing on Hinton's motion to suppress, Sergeant Einbinder testified, "And as he drove past me, his head continued to turn and our eyes just were locked." Sergeant Einbinder noted that Hinton's behavior was unusual and referred to Hinton's behavior as the "felony stare."

Sergeant Einbinder recalled, "the rear license plate on his vehicle, I noticed, was obstructed." Sergeant Einbinder searched for the car's registration and determined that the registration was expired and that the registered driver had a suspended license. Sergeant Einbinder testified that Hinton matched the description of the registered driver, so he started driving behind Hinton. Hinton then pulled over before Sergeant Einbinder activated his red and blue lights. Hinton stopped the car on a narrow shoulder near the travel lanes of the highway, but he could not move further off the road because a guardrail prevented him from doing so. There were multiple skid marks in the area.

Sergeant Einbinder approached the car on the passenger side and learned that Hinton did not own the car. Hinton had a valid driver's license from another state but his driving privileges in Virginia were suspended. The car registration was also expired, which rendered the vehicle unlawful for anyone to drive. Officer Kameron Vaughan of the Arlington County Police

---

[3] "Under the applicable standard of review, this Court views the evidence in the light most favorable to the Commonwealth, as the prevailing party below." *Park v. Commonwealth*, 74 Va. App. 635, 643 n.2 (2022). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

Department also stopped to assist Sergeant Einbinder after Hinton pulled over on the shoulder of the interstate.

Sergeant Einbinder issued Hinton a summons and determined that the car could not safely remain on the side of the highway. Einbinder testified, "I advised him that he couldn't drive and he was the [lone] occupant of the vehicle so that it was going to be impounded." Sergeant Einbinder explained that the police would impound the car and instructed Hinton that he could retrieve personal items after an inventory search. The Arlington County Police Department Directive Manual—in the section addressing a vehicle with improper registration—requires, "If the registered owner is not present at the scene, the vehicle will be impounded and stored at the contractor's storage lot." Sergeant Einbinder testified that the inventory search policy was from 2020 and included procedures for manually completing an inventory form. At the time of the inventory search of the car, Arlington County police officers used a cell phone application instead of the former hard-copy system. Einbinder testified that despite the directive's reference to the hard-copy form, "the methodology [he] used to search [was] the same" and the phone application included the same information previously entered on the printed form.

Officer Kameron Vaughan's body worn camera footage was also entered into evidence at the motion to suppress hearing. On the video, Officer Vaughan asked Hinton, "But to your knowledge, there's nothing else of value in the vehicle?" Hinton responded by shaking his head to indicate "no."

Sergeant Einbinder testified, "He was on the phone at the time or told me he was on the phone with the owner of the vehicle." Hinton was on the phone with Corey Williams, the car's registered owner, who was in Virginia Beach. Sergeant Einbinder recalled, "And when I told him I was going to inventory the vehicle, he said that -- he told me that the owner did not want me to search the vehicle." Sergeant Einbinder explained that the police always do an inventory search

when impounding a car, and Hinton replied, "Okay." Hinton did not make any other comments before Einbinder started the inventory.

Sergeant Einbinder began the inventory on the passenger side of the car, and he noted that the car was "filled with a lot of loose clothing," food, and was "disorganized and messy." The Sergeant then examined the backseat and found a Nike bag that he described as "quite heavy." Inside of the bag, Einbinder found a baggie of what appellant's counsel described as "illegal pills" and also as "suspected ecstasy" in his brief to this Court. Einbinder then put the bag down, stopped his search, stepped away from the vehicle, and placed Hinton in handcuffs before returning to the vehicle to continue his search of the bag. Sergeant Einbinder then found a firearm in the same bag as the ecstasy tablets. He found even more ecstasy tablets elsewhere in the car. When he ran a search on the serial number of the firearm, that search showed the gun was stolen.

Hinton moved to suppress the evidence recovered from the search of the vehicle. Following a hearing on February 28, 2024, the circuit court denied Hinton's motion to suppress. In a memorandum opinion and order entered on April 11, 2024, the circuit court concluded that the police properly impounded the car, that Sergeant Einbinder lawfully conducted the search, and that the inventory search was not pretextual. The circuit court explained that the officers were "permitted to impound the vehicle for public safety as it was not safe to leave on the side of a busy highway." The circuit court further found that Sergeant Einbinder conducted the search "objectively and reasonably" and explained, "There is nothing in the record that indicates the inventory was done with an investigatory motive, evidenced by Officer Einbinder's inventory of only items needing protecting." The circuit court stated, "Having considered the testimony of Officer Einbinder, the Court found him to be wholly credible."

Hinton entered a conditional guilty plea to carrying a concealed weapon, and the circuit court sentenced him to ten days of incarceration with all ten days suspended. Hinton now appeals to this Court.

ANALYSIS

On appeal, Hinton argues, "The trial court's findings of fact regarding the defendant's motion to suppress were plainly wrong and without evidence to support them," and "the trial court erred in failing to consider or deliberately refusing to consider facts favorable to the defendant." Hinton does not challenge the initial stop here when he pulled over before Officer Einbinder activated his lights. However, Hinton argues:

> The trial court erred in denying Hinton's motion to suppress with respect to each of the three requirements for inventory searches to be constitutional: 1) the vehicle was not lawfully impounded; 2) the impoundment and inventory were not conducted according to police procedures[;] and[] 3) the impoundment and subsequent search were a pretextual surrogate for an investigatory motive.

"The law regarding appellate review of a trial court's decision on a motion to suppress is well settled. The appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). "[A]n appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)). "On appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment prohibits only unreasonable searches and seizures." *Thompson v. Commonwealth*, 54 Va. App. 1, 7 (2009). "Reasonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation." *Id.* (quoting *Scott v. Commonwealth*, 20 Va. App. 725, 727 (1995)). "Warrantless searches and seizures . . . are presumptively unreasonable." *Bryant v. Commonwealth*, 72 Va. App. 179, 187-88 (2020) (alteration in original) (quoting *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008)).

"The Commonwealth carries the burden of showing that a warrantless search and seizure was constitutionally permissible." *Jackson v. Commonwealth*, 267 Va. 666, 673 (2004). "However, a defendant must show, when viewing the evidence in the light most favorable to the Commonwealth, that the denial of the motion to suppress evidence was reversible error." *Id.* An exception to the Fourth Amendment warrant requirement is the "'routine practice of securing and inventorying the . . . contents' of impounded vehicles." *Stamps v. Commonwealth*, 83 Va. App. 552, 562 (2025) (alteration in original) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976)).

The police may conduct a warrantless inventory search of a vehicle whenever "the vehicle must be lawfully impounded." *Id.* at 563. However, "the impoundment and subsequent search must be conducted pursuant to standard police procedures," and both "the impoundment and subsequent search must not be a pretextual surrogate for an improper investigatory motive." *Id.* (quoting *Knight v. Commonwealth*, 71 Va. App. 771, 784 (2020)). "The validity of the impoundment is a question separate from the validity of the subsequent inventory search and must be determined first." *King v. Commonwealth*, 39 Va. App. 306, 311 (2002). "We must consider

'not whether there was a need for the police to impound [the] vehicle but, rather, whether the police officer's decision to impound was reasonable under the circumstances.'" *Williams v. Commonwealth*, 42 Va. App. 723, 731 (2004) (alteration in original) (quoting *United States v. Brown*, 787 F.2d 929, 932 (4th Cir. 1986)).

In this case, the car was not currently registered and could not be lawfully driven by anyone, even by the registered owner whom Hinton phoned during the stop. *See* Code § 46.2-613(A) (forbidding any person from driving an unregistered vehicle on a public highway). Even if the car could have been lawfully driven, the owner—who was in Virginia Beach—was not nearby to come get the vehicle, Hinton's Virginia driver's license was suspended, and Hinton's girlfriend was at the airport where Hinton had just dropped her off. In a situation where a vehicle is not properly registered, the Arlington County Police Department Directive Manual requires an officer to impound the vehicle when the owner is not present at the scene. Furthermore, the car was also a traffic hazard where it was parked on a narrow shoulder and where it could not be moved further from the road because it was next to a guardrail. *See* Code § 46.2-1209(B) (forbidding parking a car on or adjacent to a highway if it "constitutes a hazard in the use of the highway"). There were multiple skid marks in the area, suggesting the car was parked in a dangerous location. Thus, the police lawfully impounded the vehicle.

Because—as in *Stamps*—the car Hinton was driving was unregistered and therefore unable to be driven lawfully, *Stamps*, 83 Va. App. at 568-69, and because the car also posed a genuine traffic hazard, its impoundment was necessary. Although Sergeant Einbinder described Hinton's initial look at him before Hinton pulled the vehicle over as the "felony stare," the record before this Court does not show that Einbinder impounded the vehicle as a pretext for a separate investigation. Furthermore, the Arlington County Police Department Directive Manual specifically directs the impoundment of a vehicle when the registered owner is not present at the scene, as was the case

here, and Einbinder complied with that instruction. Thus, the circuit court did not err when it concluded that the car was lawfully impounded without pretext.

Because the vehicle was lawfully impounded and that impoundment was not pretextual, this Court must also then consider whether the subsequent inventory search was conducted pursuant to standard police procedures. *See King*, 39 Va. App. at 311 (explaining that the "validity of the impoundment is a question separate from the validity of the subsequent inventory search"). "Although standardized criteria relating to inventory searches are 'often codified by a police department into a uniform inventory-search policy,' '[t]he existence of . . . [standardized criteria] may be proven by reference to either rules and regulations or testimony regarding standard practices.'" *Cantrell v. Commonwealth*, 65 Va. App. 53, 60-61 (2015) (alterations in original) (internal quotation marks omitted) (first quoting *Banks v. United States*, 482 F.3d 733, 739 (4th Cir. 2007); and then quoting *Matthews v. United States*, 591 F.3d 230, 235 (4th Cir. 2009)). "To justify a warrantless search, the standardized criteria must sufficiently limit a searching officer's discretion to prevent his search from becoming 'a ruse for a general rummaging in order to discover incriminating evidence.'" *Id.* at 61 (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). "The point is to have a policy that channels discretion." *Stamps*, 83 Va. App. at 565.

Here, an Arlington County Police Department directive provided a standardized process for conducting inventory searches. Sergeant Einbinder explained that the 2020 directive included procedures for manually completing an inventory form. At the time of Sergeant Einbinder's inventory search of the car that Hinton drove, the procedure had evolved to use new technology— with a cell phone application supplanting the previous hard-copy system. Sergeant Einbinder testified that despite the directive's reference to the hard-copy form, "the methodology" was the same and the phone application included the same information previously entered on the paper form. Sergeant Einbinder stated that the purpose of the inventory search was to "note valuables" for

the protection of the car's driver, the car's owner, and the police. The Arlington County Police Department Directive Manual required the search to occur before the car was moved to the impound yard, and Sergeant Einbinder followed that instruction. "Minor departures from the inventory-search policy do not invalidate the search itself." *Stamps*, 83 Va. App. at 566. The record demonstrates that Sergeant Einbinder complied with the directive despite the minor difference of using an electronic inventory instead of a hard-copy printed form.

The record further supports the circuit court's conclusion that the inventory search was not a pretext for an improper investigatory motive. Sergeant Einbinder followed the proper current procedures in conducting the inventory search and, although he did not document every item in the very cluttered and messy vehicle, he filled out the impoundment form and accurately recorded items of value he found in the vehicle. Even if there was a minor departure from the written policy, it "fail[ed] to prove that the inventory search here was pretextual," and Sergeant Einbinder did not depart from the *current* standard procedure used by the Arlington Police Department. *Id.* at 569. Therefore, the circuit court did not err by concluding that the inventory search was appropriately conducted and was not pretextual.

Even if there were an issue with the inventory, any error was inconsequential because after Sergeant Einbinder found the bag of ecstasy tablets, he had probable cause to continue searching the Nike bag and the vehicle. The Supreme Court of the United States has stated that "when police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) (per curiam). The Supreme Court has also clearly stated, "A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search." *United States v.*

*Johns*, 469 U.S. 478, 484 (1985). Indeed, "[t]he scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause." *United States v. Ross*, 456 U.S. 798, 823 (1982); *see also United States v. McCullum*, 469 Fed. App'x. 194, 198 (4th Cir. 2012) (holding that after discovering ammunition in the trunk of a vehicle pursuant to an inventory search, the police had probable cause to search a locked glove compartment).

Because, during the process of conducting the inventory search, Sergeant Einbinder found a large quantity of pills in a plastic bag that appeared to be ecstasy tablets, that discovery of contraband then created probable cause for him to search the vehicle without a warrant. *See Thomas*, 458 U.S. at 261. After finding the suspected ecstasy (a Schedule I controlled substance), Sergeant Einbinder put Hinton in handcuffs, continued searching the vehicle, and then discovered the concealed firearm.[4] In other words, even if Sergeant Einbinder's handling of the inventory did not comply with the standard police procedures of Arlington County for an inventory search, the warrantless search of the vehicle was constitutionally permissible because the presence of contraband created probable cause that allowed Sergeant Einbinder to further search the vehicle, even if he were not doing so to complete an inventory. The circuit court therefore did not err when it denied Hinton's motion to suppress.

CONCLUSION

In short, because the police properly impounded the car Hinton was driving, because they essentially followed their standard procedures for impounding a vehicle and then doing an inventory

---

[4] Hinton does not argue that he had a concealed weapons permit.

- 10 -

search (without pretext), and because Sergeant Einbinder had probable cause to continue searching the car anyway after finding the contraband, the circuit court did not err in denying Hinton's motion to suppress.

For all of the foregoing reasons, we affirm the judgment of the circuit court.

*Affirmed.*